346 F.Supp. 239 (1972)
ANHEUSER-BUSCH, INC., Plaintiff,
v.
BREWERS AND MALTSTERS LOCAL UNION NO. 6, affiliated with International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Defendant.
No. 72 C 362(1).
United States District Court, E. D. Missouri, E. D.
June 18, 1972.
*240 Glenn L. Moller, Moller, Talent & Kuelthau, St. Louis, Mo., for plaintiff.
Jerome J. Duff, St. Louis, Mo., for defendant.

MEMORANDUM
MEREDITH, Chief Judge.
Plaintiff, Anheuser-Busch, Inc., filed suit on June 13, 1972, against defendant Brewers and Maltsters Local Union No. 6 to enforce a mandatory grievance and arbitration provision contained in a collective bargaining agreement between the parties, and, further, to enjoin defendants from engaging in activity designed to cause a work stoppage and thereby defeat such provision. A temporary restraining order was issued by this Court on June 13, 1972, at 4:00 p. m., enjoining defendant, its members, and anyone acting in concert with them from continuing to engage in a strike, work stoppage, interruption of work or picketing of plaintiff at its place of business in St. Louis, Missouri.
The attorney for the Union accepted service of the restraining order and immediately went to the union hall and met with the officers and shop stewards of defendant. At the 12:00 o'clock midnight shift on June 13, 1972, none of the members of Local No. 6 showed up for work, and the brewery shut down. Pursuant to a show cause order, a civil contempt hearing was held on June 15, 1972, which concluded at 1:00 p. m., whereupon the Court advised the Union that unless the court order was obeyed by 4:00 p. m., penalties would be levied against the Union, and the chief executive officer of the Union, Robert Lewis. It now appears that the members of the Union are back on the job.
Pursuant to an order to show cause why it should not be so enjoined and restrained, a hearing was held on June 16, 1972. At that hearing, defendant filed motions to quash the temporary restraining order and to dismiss the complaint. The Court reserved ruling on these motions. The parties submitted evidence, examined and cross-examined witnesses, and were given full opportunity to be heard. Both parties submitted that they had presented all their evidence. Thus, at the close of the hearing and upon agreement of the parties and order of this Court, the preliminary hearing was consolidated with the hearing for permanent relief and so submitted to the Court. All damage claims of both parties were dismissed without prejudice.
Plaintiff is a corporation duly organized and existing under the laws of the State of Missouri, and is an employer in an industry affecting interstate commerce within the meaning of 29 U.S.C. § 152(2) and (7), with its principal place of business in St. Louis, Missouri. Defendant is a labor organization representing employees in an industry affecting commerce within the meaning of 29 U.S.C. § 152(3) (5) (7). Jurisdiction is founded upon 29 U.S.C. § 185.
Upon consideration of the pleadings, evidence, briefs, and the entire record in the case, this memorandum opinion constitutes the Court's findings of fact and conclusions of law.
Anheuser-Busch, Inc., held the labor negotiations for the year 1970 in Chicago, Illinois. The contracts then entered into were on a national basis. Defendant, Local 6, walked out of these negotiations. Eventually, a local agreement was entered into between plaintiff and defendant and a written contract was signed with Local 6 on July 24, 1970, retroactive to March 1, 1970, and expires after February 28, 1973. A part of the agreement included an oral agreement pertaining to the attrition of members of Local 6 which will be caused by modernization and mechanizing of the St. Louis brewery.
This oral attrition agreement is an integral part of the 1970 agreement and subject to all of its provisions.
For some time prior to February 1972, the Brewery has been in the process of remodeling and constructing a facility referred to by the Union as the Second Street plant and by the Brewery as R1.
*241 The Second Street project will be completed approximately in September 1972. At the new facility, Local 6 and Local 187 of the beer bottlers union will be working side-by-side. Additionally, Local 367 of the Teamsters has some jurisdiction over the maintenance of trucks in the area. Local 187 and Local 6 have different overtime provisions, different work weeks, and different pay provisions. Local 187 on one prior occasion took away from Local 6 certain work which Local 6 thought belonged to it. This was done through a decision of the National Labor Relations Board and resulted in Local 6 losing about 550 men.
The Brewery, aware of the complications that would result, began negotiating with Local 6 and Local 187 to divide the jurisdiction at the new facility. On or about February 28, 1972, the Brewery through its director of industrial relations, Robert Tiemann, met with Robert Lewis and showed him a large chart of the new facility and drew a line around certain portions of the facility and assigned that portion of the work to Local 6all the work outside that line would belong to Local 187. Lewis did not like that assignment since it would give to 187 the work of loading and unloading certain draught beer and cooperage which he thought Local 6 should have. Additionally, this assignment would surround the area occupied by Local 6 with employees of 187. Lewis did not accept the work assignment.
Additionally, there is a dispute over whether or not the oral attrition provision of the contract applied to persons who may be laid off as a result of the remodeling project R1.
On or about June 2, 1972, Lewis met again with Tiemann. Tiemann made an alternate proposal for work assignment which he outlined in a letter of June 5, 1972. Some of the work in the alternative proposal had already been assigned to Local 187 and Tiemann advised Lewis that 187 would have to agree to this before it could be finalized. Lewis rejected the alternate proposal.
On or about June 12, 1972, Lewis requested that the attrition agreement be applied to the R1 project or he would close down the Brewery. Richard Meyer asked Lewis to give him ten days to attempt to work this out. Lewis refused and on June 13, 1972, the members of Local 6 started going out and by midnight the plant production was stopped.
The loss to the Brewery of closing down is approximately $300,000.00 per day.
Title 29 U.S.C. § 185 authorizes Federal District Courts to entertain "[s]uits for violation of contracts between an employer and a labor organization . ."
Parties to contractual schemes for arbitration are held to that favored process for settlement where it has been contracted for. See Textile Workers v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); United Steelworkers v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers v. Warrior and Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers v. Enterprise Wheel & Car Corporation, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).
In Boys Markets, Inc. v. Retail Clerks Union, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), the United States Supreme Court overruled its decision in Sinclair Refining Co. v. Atkinson, 370 U.S. 195, 82 S.Ct. 1328, 8 L.Ed.2d 440 (1962), and held that courts may also grant injunctive relief where a collective bargaining contract contains a mandatory grievance adjustment or arbitration procedure.
Defendant submits that Boys Markets is not applicable as it is defendant's position that the grievance and arbitration provision in the instant case is not mandatory, but optional. The Court does not agree that the arbitration provision is optional but rather finds it to be mandatory. The grievance and arbitration provision of the collective *242 bargaining agreement provides in pertinent part:
"ARTICLE XVI
Grievance and Arbitration
"Section 1.In the event of a dispute, difference or disagreement between the Employer and the Union concerning the interpretation or application of the terms of this Agreement, representatives of the Employer and the Union shall make an honest and sincere effort to adjust the same in an amicable manner. In the event, however, of the inability of the Company and the Union to reach an agreement on the issue or issues in dispute, the question may, at the option of either party, be submitted for arbitration in the following manner.
"Sec. 2.Either Party may demand arbitration and shall give five (5) days' advance notice in writing to the other Party of its desire to arbitrate. The dispute shall be submitted to a Board of Arbitration consisting of three (3) persons. One person shall be selected by the Employer, one by the Union, and the third by the first two. In the event that the first two arbitrators cannot agree upon the selection of the third, then the third shall be appointed, upon the request of either party, by the Federal Mediation Service.
"Sec. 3.While the matter is pending in arbitration there shall be neither strike nor lock-out and the decisions of a majority of the Board of Arbitration shall be final and binding upon the parties. The Board of Arbitration shall not be empowered to add to, detract from or alter the terms of this Agreement in any way."
And "Article XVII, Waiver of Right to Sue", goes on to say:
"Notwithstanding any rights or action granted the parties hereto by State or Federal Law, it is agreed that any and all grievances, differences, demands, disputes, or suspensions of work, arising out of the interpretation or application of the terms of this contract, shall be settled and determined exclusively through the processes of collective bargaining, and if that fails, by the Grievance and Arbitration procedure as provided for in Article XVI of this Agreement."
Taking the words of the above agreement at their plain and ordinary meaning, it is clearly evident that this is a mandatory provision as either party may compel arbitration.
With respect to the question of whether the disputes are ones over which the parties are contractually obligated to arbitrate, it is recognized that arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit. United Steelworkers v. Warrior & Gulf Navigation Co., supra. Yet, arbitration is encouraged and as the Court stated in that case at page 582 of 363 U.S., at page 1353 of 80 S.Ct.:
"An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."
With respect to the work assignment disputes in the instant case, the agreement contains a work jurisdiction clause which provides as follows:
"ARTICLE XXI
Work Described
"Section 1.Work in malt house, brew house, fermenting cellars, bottling cellars, cellars, wash house, racking room, the handling of all full and empty cooperage, and the manufacturing of malt syrup shall be known as brewer's work.
"Sec. 2.Work of Freight Handlers shall consist of the storage, handling, mechanical or manual trucking of all freight, on platforms or docks, in yards, sheds, or any other building, the loading and unloading of freight *243 into and from railroad cars on brewery premises and all switches; the handling and mechanical or manual trucking of all empty and filled cooperage to complete same for shipment, loading into cars; cleaning of all shipping departments; the handling of all grain and the usual labor work performed on brewery premises.
"Sec. 3.Work of Store Room Men in store rooms, areas, or buildings used as storerooms, shall consist of the receiving, handling, dispensing, mechanical and manual trucking of all parts and materials stored therein, and work pertaining to the operation of the storeroom."
It is clear from the above language that the dispute over the assignment of certain work is a dispute "concerning the interpretation or application of the terms" of the collective bargaining agreement.
Regarding the dispute over the oral attrition agreement, it is defendant's position that while a dispute exists, it is not a dispute "concerning the interpretation or application of the terms" of the collective bargaining agreement for the reason the oral agreement is not a part of the collective bargaining agreement. This is without merit as this Court has found that the oral attrition agreement is an integral part of the collective bargaining agreement and subject to all of its provisions.
It is the further position of defendant that injunctive relief would not be appropriate in this case as plaintiff has filed a complaint with the National Labor Relations Board and can obtain adequate relief from that source. Defendant's argument is unpersuasive.
The United States Supreme Court has made it clear that suits brought to enforce collective bargaining agreements are not pre-empted from federal courts even where the conduct alleged was arguably protected or prohibited by the National Labor Relations Act. In Amalgamated Assn. of St., Elec. Ry. & Motor Coach Employees v. Lockridge, 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971), the Court stated at page 298 of 403 U.S. at page 1924 of 91 S.Ct.:
"We have held that such actions are judicially cognizable, even where the conduct alleged was arguably protected or prohibited by the National Labor Relations Act because the history of the enactment of § 301 reveals that `Congress deliberately chose to leave the enforcement of collective agreements "to the usual processes of the law."' Charles Dowd Box Co. v. Courtney, 368 U.S. 502, 513 [82 S.Ct. 519, 526, 7 L.Ed.2d 483] (1962)."
Furthermore, in this connection, the National Labor Relations Board has not determined to proceed on plaintiff's complaint and the plaintiff has no assurances that the defendant's unlawful conduct will be enjoined through the processes of the National Labor Relations Board.
In light of the foregoing, this Court finds the plaintiff is ready and willing to arbitrate the grievances; that under the terms of the collective bargaining agreement the parties are contractually bound to arbitrate the dispute over work assignment and the dispute over attrition; and that plaintiff will suffer immediate and irreparable injury, loss or damage, if the Union is not enjoined from activities designed to create a work stoppage.
Under the Supreme Court decisions in United Steelworkers of America v. Warrior & Gulf Navigation Co., supra, and United Steelworkers v. American Manufacturing Co., supra, this Court may fashion the mechanism for implementation of the arbitration provisions of the collective bargaining agreement in this case. Accordingly, this Court will enjoin defendant from engaging in any activity to create a work stoppage over the differences concerning work assignment and attrition. The parties shall also reduce to writing the oral agreement relating to attrition within 20 days. Unless the parties settle these disputes and reduce to writing the oral attrition agreement within 20 days from this date, the plaintiff and defendant shall *244 submit these disputes to arbitration as provided in the collective bargaining agreement. Defendant's motion to quash the temporary restraining order and dismiss the complaint will be denied.