USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-2193 JUNO SRL, ET AL., Plaintiffs - Appellants, v. S/V ENDEAVOUR, ET AL., Defendants - Appellees. ____________________ No. 95-1426 JUNO SRL, ET AL., Plaintiffs - Appellees, v. S/V ENDEAVOUR, ET AL., Defendants - Appellants. ____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. Gene Carter, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Bownes, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ _____________________ Michael X. Savasuk, with whom Bradley & Savasuk was on brief __________________ _________________ for appellants JUNO SRL, et al. Bradford D. Conover, with whom Dickerson & Reilly was on ____________________ ___________________ brief for appellees S/V ENDEAVOUR, et al. ____________________ June 9, 1995 ____________________ -2- TORRUELLA, Chief Judge. This case presents issues of TORRUELLA, Chief Judge. ____________ first impression before this Court. The first issue is what weight private rules and procedures should have in determining the liability of sailing vessels that collide while engaged in _________ the sport of yacht racing. The second issue is what forum shall assess the damages that result from such circumstances. _______ The district court decision is reported. Juno v. S/Y ____ ___ Endeavour, 865 F. Supp. 13 (D. Me. 1994). That court ruled that _________ the S/V CHARLES JOURDAN was liable to the S/V ENDEAVOUR after a collision between the two vessels, but found that the ENDEAVOUR was 40% at fault in causing the encounter. It also concluded that the CHARLES JOURDAN suffered $10,000 in damages, from which sum the court deducted its 60% finding of fault, and dismissed all other claims for compensation by both the CHARLES JOURDAN and the ENDEAVOUR. For the following reasons, we reverse on the issue of liability and affirm in all other respects. BACKGROUND BACKGROUND On October 3, 1992, the CHARLES JOURDAN, a seventy-two foot sloop, was racing in the La Nioulargue Regatta, which included a series of sailing races in and around the Bay of Saint Tropez, off southern France. The Sailing Instructions of the Regatta provided that it would be conductedpursuant to the 1989 - 1992 edition of the International Yacht Racing Rules (IYRR). Also competing in this Regatta on a different course was the ENDEAVOUR, a restored "J" class sloop 120 feet in length overall. Both race courses, however, converged at a mark designated as -3- "A," located at the entrance to Saint Tropez Bay. CHARLES JOURDAN's course called upon it to round Mark A to port on its way to the finish line at Bouillabaisse Buoy, while the ENDEAVOUR was required to finish its course at Mark A. As CHARLES JOURDAN headed for Mark A on a starboard spinnaker reach, another competing racing yacht, LA POSTE, was on a similar tack, overlapping CHARLES JOURDAN in close proximity to leeward. Pursuant to IYRR 37.1,1 the CHARLES JOURDAN, being the windward vessel, was the burdened vessel and was required to keep clear of LA POSTE. While racing along at eleven knots in this position, CHARLES JOURDAN caught up with ENDEAVOUR, who was sailing slower at seven knots and was to windward of CHARLES JOURDAN converging on a course approximately 40 from that of CHARLES JOURDAN. Because the CHARLES JOURDAN believed it had right of way as leeward yacht over the ENDEAVOUR, its crew hailed the ENDEAVOUR seeking to alter its course. Although the crew of ENDEAVOUR acknowledged the hail, it failed to change course until a last minute attempt was made by the master of the ENDEAVOUR to alter its direction to windward. The boom of the ENDEAVOUR, which was held in place by a preventor, and thus could not be sheeted in, struck CHARLES JOURDAN's backstay, damaging the backstay and rigging. Pursuant to the IYRRs and the Regatta's Sailing Instructions, the CHARLES JOURDAN filed a protest against the  ____________________ 1 IYRR 37.1 reads: "A windward yacht shall keep clear of a leeward yacht." -4- ENDEAVOUR. An International Jury was convened,2 and a hearing was conducted at which evidence was presented and arguments made by representatives of both vessels. The International Jury found that ENDEAVOUR was at fault for failing to meet its burden as the windward yacht under IYRR 37.1. See supra note 1. In a written ___ _____ decision, which was notified to the parties, the International Jury disqualified the ENDEAVOUR from the race.3  ____________________ 2 The jury was composed of international judges from France, Belgium, Andorra, Switzerland, Italy, and the United Kingdom, all of whom are certified by the International Yacht Racing Union (IYRU), yacht racing's ruling body. 3 The decision reads as follows: INTERNATIONAL JURY Races: Omya Saint-Tropez Series Heat 8th Coupe D'Autohne Nioulargue Classic Yachts ENDEAVOUR and CHARLES JOURDAN sailing in separate races approached the same finishing line on converging courses, reaching on starboard. CHARLES JOURDAN established an overlap from clear astern at least 60 feet to leeward of ENDEAVOUR. The yachts continued to sail towards the finish, at this time ENDEAVOUR had ample room and opportunity to keep clear. CHARLES JOURDAN was travelling faster than ENDEAVOUR, when CHARLES JOURDAN was in ENDEAVOUR's windshadow CHARLES JOURDAN slowed down and ENDEAVOUR's boom struck CHARLES JOURDAN['s] backstay and the collision resulted in serious damage. ENDEAVOUR never changed her course. ENDEAVOUR infringed Rule 37.1 and is disqualified. CHARLES JOURDAN is granted redress according to Rule 69(c) (Points -5- Various incidents happened thereafter which are not presently relevant. Suffice it to say that the owners of CHARLES JOURDAN caught up with the ENDEAVOUR sometime in September 1993, in Maine, and proceeded to file the present action, and to arrest said vessel. The owners of CHARLES JOURDAN claimed that ENDEAVOUR is liable in damages to them because of ENDEAVOUR's violation of IYRR 37.1, as well as the provisions of Article 12 and 13 of the Convention on the International Regulation for the Prevention of Collisions at Sea ("COLREGS"), 33 U.S.C. 1601 et __ seq., 33 C.F.R. 80.1 et seq. They claimed the right to be ____ ________ compensated for damage to the CHARLES JOURDAN, and for loss of business and sponsors resulting from the vessel being incapacitated after the collision. In its answer, the owners of ENDEAVOUR denied liability and counterclaimed for damages for loss of business, and for the alleged false arrest of the vessel. After a lively and mostly unnecessary round of discovery, the matter went to trial on the admiralty side of the bench. The district court found that because the IYRRs are the rules of a private racing organization, they "do not and cannot preempt the application of the COLREGS which have been adopted by treaty to govern worldwide." Juno, 865 F. Supp. at 17. The ____ court thus ignored the findings of the International Jury and  ____________________ equal to the place she had at the time of the incident). -6- concluded that, under COLREG Rule 13, 33 U.S.C. foll. 1602,4 CHARLES JOURDAN was an overtaking vessel required to keep clear of ENDEAVOUR. Pursuant to the "Pennsylvania Rule"5 the CHARLES ____________ JOURDAN was presumed at fault. Nevertheless, the court found that, under COLREG Rule 8, 33 U.S.C. foll. 1602,6 the  ____________________ 4 Rule 13. Overtaking (a) Notwithstanding anything contained in the Rules of Part B, Sections I and II, any vessel overtaking any other shall keep out of the way of the vessel being overtaken. (b) A vessel shall be deemed to be overtaking when coming up with another vessel from a direction more than 22.5 degrees abaft her beam, that is, in such a position with reference to the vessel she is overtaking, that at night she would be able to see only the sternlight of that vessel but neither of her sidelights. (c) When a vessel is in any doubt as to whether she is overtaking another, she shall assume that this is the case and act accordingly. (d) Any subsequent alteration of the bearing between the two vessels shall not make the overtaking vessel a crossing vessel within the meaning of these Rules or relieve her of the duty of keeping clear of the overtaken vessel until she is finally past and clear. 5 The Pennsylvania, 86 U.S. (19 Wall.) 125 (1873) (failure to _________________ abide by navigational rules creates a presumption of negligence). 6 Rule 8. Action to avoid collision (a) Any action taken to avoid collision shall, if the circumstances of the case admit, be positive, made in ample time and with due regard to the observance of good seamanship. -7- ENDEAVOUR's failure to take action to avoid the collision "was a significant cause of the accident," and found it 40% at fault. Juno, 865 F. Supp. at 18. ____ On the question of consequential damages, the district court dismissed all claims for loss of charter and sponsorship income by all parties, for lack of proof. The court reached a similar conclusion regarding the counterclaims. The court made a determination of physical damages in the amount of $10,000 to the CHARLES JOURDAN caused by the collision, which was reduced to $4,000. This appeal ensued. ANALYSIS ANALYSIS  ____________________ (b) Any alteration of course and/or speed to avoid collision shall, if the circumstances of the case admit, be large enough to be readily apparent to another vessel observing visually or by radar; a succession of small alterations of course and/or speed should be avoided. (c) If there is sufficient sea room, alteration of course alone may be the most effective action to avoid a close- quarters situation provided that it is made in good time, is substantial and does not result in another close-quarters situation. (d) Action taken to avoid collision with another vessel shall be such as to result in passing at a safe distance. The effectiveness of the action shall be carefully checked until the other vessel is finally past and clear. (e) If necessary to avoid collision or allow more time to assess the situation, a vessel shall slacken her speed or take all way off by stopping or reversing her means of propulsion. -8- A. Standard of Review A. Standard of Review __________________ Our standard for reviewing a district court's findings of fact and conclusions of law made in conjunction with a bench trial is well settled. We review claimed errors of law de novo. __ ____ Williams v. Poulos, 11 F.3d 271, 278 (1st Cir. 1993); Blanchard ________ ______ _________ v. Peerless Ins. Co., 958 F.2d 483, 487 (1st Cir. 1992). The __________________ district court's findings of fact, however, will not be set aside unless they are demonstrated to be clearly erroneous. Williams, ________ 11 F.3d at 278; Fed. R. Civ. P. 52(a). In other words, we will give such findings effect unless, after carefully reading the record and according due deference to the trial court, we form "a strong, unyielding belief that a mistake has been made." Cumpiano v. Banco Santander Puerto Rico, 902 F.2d 148, 152 (1st ________ ____________________________ Cir. 1992). Where there are two permissible views of the evidence, the interpretation assigned by the trial court will therefore be adopted. Williams, 11 F.3d at 278.  ________ The clearly erroneous standard also ordinarily applies to our review of a district court's resolution of mixed questions of law and fact. Id. In such situations, however, we are ___ obligated to determine whether the court's decision was infected by legal error. If a trial court bases its findings upon a mistaken impression of applicable legal principles, the reviewing court is not bound by the clearly erroneous standard. Id.  ___ B. The Contractual Nature of the B. The Contractual Nature of the _____________________________ Sailing Instructions and the IYRR Sailing Instructions and the IYRR _________________________________ The history of the COLREGS shows that they were enacted because of the need to establish a code of international rules of -9- the road for maritime traffic throughout the world. See H.R. ___ Rep. No. 447, 95th Cong., 1st Sess. 1977, reprinted in 1977 _________ __ U.S.C.C.A.N. 509. However, nothing in their history, or in the public policy issues that led to their enactment, indicates that they were meant to regulate voluntary private sports activity in __ which the participants have waived their application and in which _________________________________________________________________ no interference with nonparticipating maritime traffic is _________________________________________________________________ implicated. Therefore, by entering a regatta with sailing __________ instructions which unambiguously set forth special, binding "rules of the road," the participants waive conflicting COLREGS and must sail in accordance with the agreed-upon rules. We base this conclusion not only on the nature and history of both the COLREGS and the private activity in question, but also because of the strong public policy in favor of the private settlement of disputes. Surprisingly, considering the extent and history of the maritime and yachting tradition within its jurisdiction, we can find no published cases of this circuit regarding the issues raised by this appeal. In fact, even outside the First Circuit there is a dearth of applicable jurisprudence, although older reported English cases reveal that these questions have not altogether avoided judicial scrutiny over the years. The cases that we have found, however, are helpful to the extent that they establish the principle -- with which we are in full accord -- that when one voluntarily enters a yacht race for which published sailing instructions set out the conditions -10- of participation, a private contract results between the participants requiring their compliance therewith. See De Sole ___ _______ v. United States, 947 F.2d 1169, 1173 (4th Cir. 1991); Clarke v. _____________ ______ The Earl of Dunraven, the Satanita, [1897] A.C. 59, 64, 66; _____________________________________ Meggeson v. Burns, [1972] 1 Lloyd's Rep. 223; Clarke v. Thayer, ________ _____ ______ ______ 43 N.Y.S. 897, 898 (1897). The legally binding nature of the obligations created by the IYRR and the sailing instructions is not altogether a new or revolutionary concept. In 1897, in The Satanita, A.C. at 64- ____________ 66, a case involving a collision between two racing yachts sailing under the rules of the Yacht Racing Association (of Great Britain), the House of Lords concluded that the owners were bound by the Association rule making one yacht liable "for all damages," notwithstanding the liability limitation provisions of the Merchant Shipping Act. Lord Herschell found that the "sailing rules by which they have become contractually bound," id. at 66, were a valid basis for seeking all damages suffered, ___ in effect deciding that the limitation of the statute had been contractually waived. In Clarke v. Thayer, 43 N.Y.S. at 898, ______ ______ also an 1897 case, but of an American state court, the court held that a yacht club's racing rule bound a member of the club participating in a club regatta, notwithstanding a conflicting navigation law of the United States. The court explained that, although those laws were imperative, nothing prevented a person from voluntarily waiving them. Id. More recently, in Meggeson ___ ________ v. Burns, 1 Lloyd's Rep. 223, a British court found that "the _____ -11- parties had agreed to be bound by the IYRU rules and the [protest] committee's findings of fact, as far as they go, are final."7 Finally, a recent case in the Fourth Circuit, De Sole, _______ 947 F.2d at 1173, involved a sailing race in which one private participant collided with another participating vessel owned by the U.S. Naval Academy. The central issue in that case was the applicability of the assumption of risk doctrine. In deciding that issue, the court assumed the applicability of the IYRRs to race participants and the authority of the protest committee to determine fault. The De Sole court also strongly implied that ________ racing authorities may provide for private resolution of all such disputes, including the apportionment of damages, to promote "the traditional role of encouraging private determination of liability." Id. at 1173 n.6. ___ To our knowledge, only one court has ruled that the IYRRs are inapplicable. In Sletter v. Hawaii Yacht Club, 1993 _______ __________________ A.M.C. 2863 (D. Hawaii 1993), the court ruled that the IYRRs "do not preempt the applicable statutory provisions." As in the district court's opinion in the instant case, however, no reasoning or authority was provided for this conclusion. In the present case, the Sailing Instructions established the conditions by which race participants agreed to be bound. One of these was that "[t]he event [would be] governed by the International Yacht Racing Rules of the IYRU (1989). . .  ____________________ 7 Curiously, it nevertheless reviewed the evidence, affirmed the committee's ruling, and then decided the damages to be assessed. -12- ." These rules, particularly IYRR 37.1, clearly establish that a windward yacht must keep clear of one to leeward. Supra note 1. _____ More significantly, however, these rules set out a detailed mechanism for determining who among competing yachts has infringed these rules of conduct. See IYRR, Part VI - Protests, ___ Penalties and Appeals, (Plaintiffs-Appellants' Appendix, Vol. VIII, pp. 2432a-2437a). The IYRRs, together with the Sailing Instructions, establish the procedure for filing a protest, see ___ IYRR 68, and the procedures to be followed thereafter, which include the conduct of a hearing, at which the parties have a right to be present, and may introduce and rebut evidence, see ___ IYRRs 71-74, and which require that the decision of the protest committee hearing the protest issue a written decision that is notified to all interested parties, see IYRR 74.6.8 Pursuant to ___ Amendment No. 1 to the Sailing Instructions in effect for this Regatta, and the provisions of Appendix 8 of the IYRRs, the protest committee was substituted by an international jury, whose decisions on all protests is final and unappealable. See IYRR, ___ Appendix 8. These mechanisms were agreed to by the parties for the resolution of one of the issues that have become the subject of this suit, i.e., who was at fault for the collision between ____ _____  ____________________ 8 They even provide an appeals procedure, see IYRRs 77-78, which ___ although not applicable in this case includes appeals on issues of rule interpretation, first to the national yachting authority, and then to the IYRU. These appellate bodies commonly issue published opinions and comprise a considerable body of jurisprudence cited and relied upon by yacht racers, and by the protest committees and international juries. -13- ENDEAVOUR and CHARLES JOURDAN. The parties agreed to the substantive rules for determining fault, they agreed to the adjudicating forum, and they were apprised of the procedures. They appeared before this forum, submitted to its jurisdiction, presented evidence and argument, and thereafter were served with that body's findings and final decision. Thus, the CHARLES JOURDAN and the ENDEAVOUR were contractually bound to race by the rules of the road contained in the IYRRs, and to resolve issues related to fault for any collisions according to those rules. This is consistent with the long-established traditions and rules of conduct of this sport. See generally J. Rousmaniere, The Golden Pasttime: A New History _____________ ___________________________________ of Yachting (1986). Moreover, there is a well-established public ___________ policy encouraging the private resolution of disputes through arbitration and other non-judicial forums. See Federal ___ Arbitration Act, 9 U.S.C. 1 et seq.; Allied-Bruce Terminix ________ ______________________ Cos., Inc. v. Dobson, __ U.S. __, 115 S. Ct. 834 (1995); __________ ______ Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220 (1987); ____________________________ _______ Southland Corp. v. Keating, 465 U.S. 1, 10 (1984). See also _______________ _______ ________ United Paperworkers Int'l Union v. MISCO, Inc., 484 U.S. 29, 36 _______________________________ ___________ (1987) (labor disputes); Vimar Seguros Y Reaseguros, S.A. v. M/V ________________________________ ___ SKY REEFER, 29 F.3d 727 (1st Cir.) (COGSA), cert. granted, 115 S. __________ _____ _______ Ct. 571 (1994); Scherb v. Alberto Culver Co., 417 U.S. 506 (1973) ______ __________________ (international arbitration agreements). We also note that our decision here comports with 2 of the Federal Arbitration Act, which pointedly states that "[a] -14- written provision in any maritime transaction . . . to settle by arbitration a controversy arising out of such . . . transaction . . . shall be valid, irrevocable, and enforceable." These conditions exist here.9 Yacht racing is a maritime transaction, and the provisions of the IYRR establishing the racing rules and the protest procedures are in writing and binding on participants. Furthermore, the procedures established by the IYRR meet the requirements of due process: there is appropriate written notification of the allegations, notice is given of the hearing; the parties are allowed to appear and present evidence and witness testimony; they may also cross-examine opposing witnesses and argue orally; and generally, engage in all those accepted activities held so dear by common law lawyers. Finally, a written decision, in which findings of fact are made and fault apportioned, is issued to all interested parties. Equally important, the evidence is heard soon after the events take place by a panel of experts who are fully versed in the niceties of the activity in question. It is hard to find fault with such a process, particularly when it is exactly what the participants agreed to. Insistence on blind application of COLREGS to the facts of this case is not only unsupported by any historical imperative in this legislation and contrary to the weight of the sparse  ____________________ 9 Section 1 of the Federal Arbitration Act, 9 U.S.C. 1, states: "'Maritime transactions,' as herein defined, means . . . agreements relating to . . . collisions . . . ." -15- relevant authority, it is logically unsound. Such application would turn on its head and render rife with uncertainty the thousands of private yacht races that take place throughout the United States and worldwide in which participants voluntarily agree to be bound by the IYRRs. See De Sole, 947 F.2d at 1170. ___ _______ The decision could even have a serious negative impact on such international races as the America's Cup or the yachting events of the forthcoming Olympic Games in Atlanta. Under such logic, notwithstanding agreement by Olympic participants to abide by IYRRs and to have protests decided by international juries, they could thereafter relitigate any issues in the courts under the COLREGS. Such absurdity is difficult to countenance, and cannot have been contemplated by Congress or the treaty negotiating authorities when the COLREGS were adopted. Such legislation is simply not applicable to private yacht racing in which the participants have voluntarily adopted a different set of rules of the road for application among themselves.10  ________________________________ In sum, the International Jury found the ENDEAVOR solely responsible for the collision, and it was inappropriate for the district court to have gone beyond this decision in the assignment of fault. We conclude that the findings of that forum _____ were final and binding on the parties, and we therefore reverse the decision of the district court in that regard. The question of damages is another matter.  ____________________ 10 As to third parties, of course, the COLREGS fully regulate normal maritime traffic vis-a-vis private races. -16- C. Damages C. Damages _______ No provision was made in either the Sailing Instructions or the IYRRs for the assessment of damages by the International Jury, and damages were not assessed. In fact, IYRR 76.1 (entitled "Damages") states that "[t]he question of damages arising from an infringement of any of the rules shall be governed by the prescriptions, if any, of the national authority." The De Sole court interpreted this language as _______ meaning that: [The] courts are the rightful location of litigation over yacht racing damages unless racing union authorities provide, in essence, for private resolution. 947 F.2d at 1173 n.6. We agree with this conclusion, as only such matters as are agreed to may be submitted to private resolution. See International Broth. of Teamsters v. Washington ___ __________________________________ __________ Emp., Inc., 557 F.2d 1345 (9th Cir. 1977); Anheuser-Busch, Inc. __________ ____________________ v. Brewers and Maltsters Local Union, 346 F. Supp. 239 (D. Mo. __________________________________ 1972) (parties cannot be required to submit to arbitration any dispute which has not been agreed upon for submittal). Thus, the CHARLES JOURDAN was entitled to claim and prove the damages caused by ENDEAVOUR, based upon the determination of fault by the International Jury. The district court concluded that the ENDEAVOUR caused the CHARLES JOURDAN damage in the amount of $10,000 and that neither vessel was able to prove the other claims made. We find these conclusions to be fully supported by the record and therefore affirm them. As we have explained, the International -17- Jury found the ENDEAVOUR solely at fault for the collision, and therefore the district court's reduction of the CHARLES JOURDAN's award to $4,000 based on its finding that the CHARLES JOURDAN was 60% at fault was in error. The district court is ordered to enter judgment in favor of plaintiffs in the amount of $10,000. Costs are granted in favor of defendant.11  ____________________ 11 The record shows that an offer of judgment by defendant in the amount of $50,000 was refused by plaintiff. -18-