Gordon v. Warden, NH State Prison    CV-02-427-M    08/29/03
                    UNITED STATES DISTRICT COURT

                       DISTRICT OF NEW HAMPSHIRE


Steven Gordon,
     Petitioner

     v.                                    Civil No. 02-427-M
                                           Opinion No. 2003 DNH 150
Warden, New Hampshire State Prison,
     Respondent


                          **O R D E R**


     By order dated March 24, 2003, the court dismissed Steven

Gordon's petition for habeas corpus relief, concluding that

"[n]othing in the habeas petition or in the decision of the New

Hampshire Supreme Court suggests that the result reached in

petitioner's state proceedings was either 'contrary to' or

'involved an unreasonable application of clearly established

Federal law, as determined by the Supreme Court of the United

States.'" Gordon v. Warden, 2003 DNH 51 at 11-12 (D.N.H. March

24, 2003). Subsequently, however, the court vacated that order

(subject to reinstatement) and granted petitioner an additional

30 days within which to file an objection to the State's motion

for summary judgment. Gordon v. Warden, 2003 DNH 79 (D.N.H. May

16, 2003). In that order, the court observed:

> With the benefit of the court's earlier order, petitioner should be aware of the legal principles governing his petition for habeas relief. He is encouraged to focus his objection on those issues. Specifically, he must demonstrate that the state court's adjudication of his claim under the "doctrine of specialty" resulted in either a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or one that was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

Id. at 3. At petitioner's request, that filing deadline was extended for an additional 30 days (to July 31, 2003), with the provision that "no further extensions" would be granted. Endorsed Order dated June 27, 2003 (docket no. 17). On August 11, 2003, the court received petitioner's (untimely) objection to the State's motion for summary judgment.

In his petition (and as developed more fully in his objection), petitioner challenges the state court's jurisdiction to revoke his probation related to his conviction and sentence for sexual assaults he committed in 1993. Specifically, he says the probation revocation proceedings violated the "doctrine of

2

specialty," insofar as his probation violation was not one of the charges on which his extradition from Belgium was based.

## Background

Petitioner is serving the balance of a six to fifteen year sentence in the New Hampshire State Prison that was originally imposed in 1993, after he was convicted of aggravated felonious sexual assault.[1]  For reasons that are unclear, in 1997, that sentence was apparently "modified," he was released from prison, and "he was placed on probation."  State v. Gordon, 146 N.H. 324, 325 (2001).  Not long after his release (and while he was still on probation), however, petitioner raped two women in Rockingham County, New Hampshire (the "1998 sexual assaults").  He was charged with four counts of aggravated felonious sexual assault, one count of being a felon in possession of a firearm, and one count of criminal mischief.  Id.  But, before he could be apprehended, petitioner fled to Belgium.

---

[1]     Petitioner will also serve two consecutive sentences of life imprisonment without the possibility of parole, and a consecutive three and one-half year sentence for kidnaping. State v. Gordon, 148 N.H. 681 (2002).  He also faces re-sentencing on convictions for five additional counts of aggravated felonious sexual assault and two additional counts of kidnaping.  State v. Gordon, 148 N.H. 710 (2002).

3

Pursuant to an extradition treaty between Belgium and the United States, the Rockingham County Attorney promptly requested petitioner's extradition based upon the 1998 sexual assaults. That request was, however, silent as to any charges that might be brought against Gordon for having violated the conditions of his probation (which, as noted, was imposed as part of his sentence for the 1993 sexual assault conviction).

Petitioner was subsequently extradited and, upon his return to New Hampshire, the State moved to revoke his probation on the 1993 conviction and sentence. Revocation was sought on three grounds: (1) by committing the most recent aggravated felonious sexual assaults (i.e., the 1998 sexual assaults), petitioner violated the conditions of his probation which, among other things, required that he not engage in any criminal conduct; (2) by using a handgun to perpetrate those sexual assaults, petitioner again violated the conditions of his probation (by committing the crime of being a felon in possession of a firearm); and (3) by absconding from the state without permission when he fled to Belgium, petitioner violated the provision of his

4

probation that prohibited him from leaving the jurisdiction without prior permission.

At his revocation hearing, petitioner challenged the court's jurisdiction to revoke his probation, claiming that any such proceeding would violate the terms of the extradition treaty between the United States and Belgium. Specifically, petitioner argued that under the "doctrine of specialty," he was subject to detention, prosecution, and punishment in the United States solely for the offenses for which extradition had been granted - that is, only for the 1998 sexual assaults. So, according to petitioner, while he could be prosecuted for his most recent sexual assaults, the State could not lawfully revoke his probation based upon that conduct because, as to probation revocation, the extradition request was silent. Revoking his probation, he argues, amounted to reimposing punishment for earlier criminal conduct which, again, was not referenced in the extradition request and, under the doctrine of specialty, could not be done under the treaty until he first had an opportunity to leave this country.

In short, petitioner says that because Belgian authorities did not extradite him to face probation revocation (from an <u>earlier</u> conviction and sentence for sexual assault), they would object to any proceeding or detention related to or based upon a probation violation charge and, therefore, his current incarceration (at least to the extent he is being detained to serve the balance of his earlier sentence) is in violation of the extradition treaty and is unlawful. The trial court rejected petitioner's argument, as did the New Hampshire Supreme Court on direct appeal. <u>State v. Gordon</u>, 146 N.H. 324 (2001). This timely and fully exhausted petition for federal habeas relief under 28 U.S.C. § 2254 followed.[2]

---

[2] Parenthetically, the court notes that, as a condition of his release from prison on probation, petitioner waived extradition "from any state in the United States or any other place." <u>State v. Gordon</u>, 146 N.H. at 325. Although the New Hampshire Supreme Court did not discuss this issue in detail, choosing instead to address petitioner's claims on the merits, it is entirely possible that petitioner waived his right to challenge extradition related to revocation of his probation. Although he denies any waiver - pointing to the fact that he promptly and vigorously challenged the State's efforts to revoke his probation - that argument is of little moment if, as it appears, one of the conditions of his release on probation was a knowing, voluntary, and written waiver of any challenge to extradition.

**Discussion**

Since passage of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), the power to grant federal habeas relief to a state prisoner with respect to claims adjudicated on the merits in state court has been substantially limited. A federal court may not disturb a state conviction unless the state court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Alternatively, habeas relief may be granted if the state court's resolution of the issues before it "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," at the time the state conviction became final. 28 U.S.C. § 2254(d)(1). See also Williams v. Taylor, 529 U.S. 362, 399 (2000). Here, petitioner attacks the underlying state court decision pursuant to section 2254(d)(1). So, to prevail on his petition, Gordon must demonstrate that the state supreme court's rejection of his treaty defense was contrary to, or involved an

7

unreasonable application of, clearly established Federal law, as determined by the Supreme Court.

The United States Supreme Court recently explained the distinction between decisions that are "contrary to" clearly established federal law, and those that involve an "unreasonable application" of that law.

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412-13. And, as the Court noted, "[T]he most important point is that an unreasonable application of federal law is different from an incorrect application of federal law . . . . Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly

8

established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 410-11 (emphasis in original). With those principles in mind, the court turns to Gordon's petition.

The doctrine of specialty provides, in general, that a person brought before a court pursuant to an extradition treaty can only be tried for offenses that are both covered by the treaty and actually identified in the extradition proceedings. See United States v. Alvarez-Machain, 504 U.S. 655 (1992); United States v. Rauscher, 119 U.S. 407 (1886). See also 18 U.S.C. § 3192. Essentially, "[w]hat the doctrine of specialty requires is that the prosecution be 'based on the same facts as those set forth in the request for extradition.'" United States v. Sensi, 879 F.2d 888, 895 (D.C. Cir. 1989) (quoting Restatement (Third) of Foreign Relations Law of the United States § 477, comment a).

Here, it is uncontested that the facts upon which extradition was based related to petitioner's most recent criminal conduct - the aggravated felonious sexual assaults he committed in 1998. The State concedes that the extradition

9

request did not mention any intention to revoke petitioner's probation, which had been imposed earlier, as part of his sentence for the 1993 sexual assault. Nevertheless, the New Hampshire Supreme Court noted that the 1998 sexual assaults "formed the very basis for finding that he had violated his probation." State v. Gordon, 146 N.H. at 327. The court also pointed out that:

> Article 15 of the extradition treaty between the United States and Belgium provides that persons extradited under the treaty "may not be detained, tried, or punished in the Requesting State except for . . . the offense for which extradition has been granted or a differently denominated offense based on the same facts on which extradition was granted, provided such offense is extraditable or is a lesser included offense."

Id. (emphasis added). Because it found that the probation revocation charge qualified under the treaty as a "differently denominated offense based on the same facts on which extradition was granted," the state court determined that no violation of the principle of specialty occurred.

Additionally, the state court held that Belgium would have had no reason to object to petitioner's reincarceration on his 1993 sentence for sexual assault, since that consequence was the

10

direct result of the criminal acts for which he was extradited in the first place (i.e., the 1998 sexual assaults). State v. Gordon, 146 N.H. at 327. That determination was entirely consistent with federal case law since, as the court of appeals for this circuit has observed,

> In the last analysis, then, the inquiry into specialty boils down to whether, under the totality of the circumstances, the court in the requesting state reasonably believes that prosecuting the defendant on particular charges contradicts the surrendering state's manifested intentions, or, phrased another way, whether the surrendering state would deem the conduct for which the requesting state actually prosecutes the defendant as interconnected with (as opposed to independent from) the acts for which he was extradited.

United States v. Saccoccia, 58 F.3d 754, 767 (1st Cir. 1995).

In the end, petitioner was held accountable in two ways for the acts giving rise to his extradition - his probation was revoked based upon those acts and he was prosecuted for those acts. That the scope of his liability for that extraditable criminal conduct extended beyond a single prosecution, and included the related collateral consequence of probation revocation, does not implicate the principle of specialty. See e.g., Collins v. Loisel, 259 U.S. 309, 312 (1922) ("The law does

11

not require that the name by which the crime is described in the two countries shall be the same; nor that the scope of the liability shall be coextensive, or, in other respects, the same in the two countries. It is enough if the particular act charged is criminal in both jurisdictions."); United States v. Sensi, 879 F.2d at 894 (same).

It can hardly be said that the consequence of probation revocation was unrelated to the acts warranting extradition - petitioner was extradited by Belgium precisely for the purpose of holding him fully accountable for his most recent acts of sexual assault, and those very acts resulted in revocation of his probation. Under these circumstances it is, as the state court reasonably determined, highly doubtful that Belgium would object to revocation proceedings as part and parcel of holding the petitioner fully accountable for his extraditable acts of sexual assault. See generally, Saccoccia, 58 F.3d at 767. See also United States v. Tse, 135 F.3d 200, 205 (1st Cir. 1998) ("Because the doctrine of specialty is concerned with comity rather than the rights of the defendant, 'the protection of specialty exists only to the extent that the surrendering country wishes.'")

12

(quoting United States v. Najohn, 785 F.2d 1420, 1422 (9th Cir. 1986)). Belgium would be particularly unlikely to object since petitioner's underlying conviction and sentence (as to which his probation was revoked) were also for (other) acts of aggravated felonious sexual assault. In other words, petitioner's probation revocation and his subsequent consecutive life sentences all stem from conduct for which Belgium demonstrated a clear willingness to extradite him: aggravated felonious sexual assault.

In light of the foregoing, it is highly unlikely that the State's decision to revoke petitioner's probation violated the doctrine of specialty. As noted by the court of appeals for this circuit:

> Specialty . . . is not a hidebound dogma, but must be applied in a practical, commonsense fashion. Thus, obeisance to the principle of specialty does not require that a defendant be prosecuted only under the precise indictment that prompted his extradition, or that the prosecution always be limited to specific offenses enumerated in the surrendering state's extradition order.

Saccoccia, 58 F.3d at 767 (citations omitted). For purposes of Gordon's habeas petition, however, the critical point is this: regardless of whether this or any other court might conceivably

13

apply the pertinent law in a manner more favorable to Gordon, "neither the reasoning nor the result of the state-court decision contradicts" that law. <u>Early v. Packer</u>, 123 S.Ct. 362, 365 (2002). Consequently, petitioner has not established (nor can he establish) that the state court's resolution of his claims was "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Nor can petitioner establish that the state court's resolution of his claims was based upon an "unreasonable application" of that law. <u>Id.</u>

## Conclusion

The state supreme court's rejection of petitioner's treaty defense was neither contrary to, nor did it involve an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court. <u>See</u> 28 U.S.C. § 2254(d)(1). While petitioner may disagree with the state court's ultimate conclusion, that court plainly identified <u>and</u> reasonably applied the governing law in arriving at its decision. That is to say, the state court correctly identified the rule of law applicable to petitioner's case and there is no Supreme Court

14

case involving "materially indistinguishable facts" that is contrary to the result the state court reached. Williams, 529 U.S. at 413. Moreover, the state court did not "unreasonably appl[y] [the governing legal principle] to the facts of the prisoner's case." Id. Consequently, this court is necessarily precluded from granting relief under 28 U.S.C. § 2254. See generally Packer, 123 S.Ct. at 364-66. See also McCambridge v. Hall, 303 F.3d 24, 35-37 (1st Cir. 2002).

In light of the foregoing, the State's motion for summary judgment (document no. 11) is granted and the petition for federal habeas corpus relief (document no. 1) is denied. The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

August 29, 2003

cc:  Steven B. Gordon
     Susan P. McGinnis, Esq.