Hillsborough
No. 89-177

THE STATE OF NEW HAMPSHIRE

v.

GINA KENNISON

May 6, 1991

*John P. Arnold*, attorney general (*David S. Peck*, senior assistant attorney general, and *Jeffrey A. Meyers*, attorney, on the brief, and *Mr. Meyers* orally), for the State.

*Sakellarios & Associates*, of Manchester (*Jean-Claude Sakellarios* on the brief and orally), for the defendant.

JOHNSON, J. The defendant, Gina Kennison, was convicted of violating RSA 318-B:2 (Supp. 1990) (possession of a controlled substance with intent to distribute) following a bench trial in Superior Court (*Dalianis*, J.). Kennison appeals her conviction and sentence, arguing first that the trial court failed to enforce a promise the State made to seek a probationary sentence in her case in exchange for her cooperation. Second, she appeals the Superior Court's (*Pappagianis*, J.) denial of her motion to suppress evidence found during a search of her car. Because we conclude that the stop of Kennison's car, immediately preceding the search, was not supported by reasonable suspicion, and therefore requires reversal of her conviction, we need not address the defendant's first argument.

The facts relating to the automobile stop, adduced at the suppression hearing, are as follows. At approximately 3:00 p.m. on October

13, 1987, Sergeant James Brackett of the Nashua Police Department telephoned his brother, Captain Alan Brackett, of the Hudson Police Department, regarding an anonymous telephone tip that the sergeant had received about ten minutes earlier concerning a Gina Kennison. The informant, a male unknown to the sergeant, alleged that he had seen four pounds of marijuana in the trunk of Kennison's car. Sergeant Brackett testified:

> "The caller informed me that Gina Kennison had a blue Cadillac and that plate number was 571860. The caller also stated that she worked at New Hampshire Precision Company on 35 Progress Avenue in Nashua and that she'd be leaving work at 3:00 and going back to her residence in Hudson and from there, she would be making deliveries of marijuana."

Kennison was known to Captain Brackett; he had seen her associating with drug users and sellers during 1981, 1982, and 1983, and he had once conducted a drug arrest of persons seated in a car in which she was a passenger. Moreover, during the summer of 1986, Captain Brackett received a tip from a "confidential reliable informant" that Kennison sold marijuana. Last, Captain Brackett testified that the Nashua Police Department issued two reports in the summer of 1986 "about a male caller calling stating that he had observed pounds of marijuana in Gina Kennison's truck."

Following receipt of the tip recounted above by Sergeant Brackett, the Nashua police confirmed that the described car was parked in the New Hampshire Precision Company parking lot and was registered to Kennison. At approximately 3:00 p.m., undercover officers observed a woman enter the car and drive off. The officers attempted to follow the car, but lost it in traffic.

Captain Brackett was informed of these happenings and began surveillance of Kennison's home in Hudson. He watched as Kennison arrived, parked her car, and entered her house. For about two hours, nothing of consequence happened. Then, at approximately 5:00 p.m., Kennison left her house, entered her car, and drove away. Captain Brackett followed her for one-half to three-quarters of a mile, observed no suspicious or illegal activity, and "pulled her over."

Upon approaching Kennison's car, Captain Brackett informed her that she had been stopped because he had probable cause to believe that she was transporting controlled drugs. He then asked her to sign a consent form in order to give him permission to search her car. Kennison was confused by the consent form and asked Captain

Brackett what would happen if she did not sign it. He told her that she would be free to go, but he would impound the car and seek a search warrant. She signed the consent form and stated, "I know what you're going to find in there [the car]." Captain Brackett arrested Kennison after finding approximately four pounds of marijuana in the trunk.

Kennison filed a motion in the superior court to suppress the evidence found during the search of her car and the subsequent search incident to her arrest, but the motion was denied. On appeal, Kennison argues that the denial was improper because the stop and search were conducted in violation of part I, article 19 of the New Hampshire Constitution, and the fourth amendment to the United States Constitution. The State disagrees, arguing that (1) the investigative stop of Kennison's car was supported by reasonable suspicion; (2) the reasonable suspicion ripened into probable cause when Kennison stated, "I know what you're going to find;" (3) the warrantless search of Kennison's car was proper because exigent circumstances existed; (4) assuming *arguendo* that exigent circumstances did not exist, the warrantless search was proper because this court should adopt an "automobile exception" to the warrant requirement; and (5) assuming *arguendo* that the officers' reasonable suspicion did not ripen into probable cause, the warrantless search was proper because Kennison knowingly, intelligently, and voluntarily consented to the search. Because we hold that the police lacked reasonable suspicion to stop Kennison's car, we do not address the State's remaining four arguments.

■ We have held that the New Hampshire Constitution may provide our citizens with more protection relative to search and seizure than the Federal Constitution. *See State v. Ball*, 124 N.H. 226, 231–32, 235, 471 A.2d 347, 350–51, 353 (1983). We elect to decide the case before us under our State Constitution. *See id.* at 232, 471 A.2d at 351; *see also State v. Bertrand*, 133 N.H. 843, 587 A.2d 1219 (1991) (electing to decide case under Federal Constitution).

■■ We recently had the opportunity to affirm that certain investigative stops are constitutionally permissible, although based on less than probable cause. *State v. Pellicci*, 133 N.H. 523, 528–29, 580 A.2d 710, 713 (1990). An investigative stop passes constitutional muster where it is substantially less intrusive than an arrest, and where the investigating officer undertook the stop "on the basis of a reasonable suspicion that the person detained had committed, was committing, or was about to commit a crime . . . ." *Id.* Moreover, we require

the officer to "'be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion.'" *State v. Brodeur*, 126 N.H. 411, 415, 493 A.2d 1134, 1137–38 (1985) (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). At the heart of every analysis involving an investigative stop is a balancing of "the governmental interest that allegedly justified the stop against the extent of the intrusion on protected interests." *Pellicci supra.*

■■ Where, as here, the decision to make an investigative stop is based on information received from an informant, we must examine the investigating officers' reliance on and use of the informant's tip. Thus, we examine the reliability and credibility of the informant, and his or her basis of knowledge, *see State v. Hazen*, 131 N.H. 196, 200, 552 A.2d 77, 80 (1988) (examining affidavit in support of search warrant), and then make a final judgment according to the "totality of the circumstances." *Id.* The factors used to evaluate the informant's reliability, credibility, and basis of knowledge are the same whether we are faced with a question of probable cause or, as here, reasonable suspicion. The quantity of information needed to support reasonable suspicion is of course less than that required for probable cause. *See* 1 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 9.3(e), at 474–86 (1987), § 9.3, at 73–78 (Supp. 1991).

Using these factors to examine the informant's tip at issue here, we fail to find the requisite level of facts and reasonable inferences that would justify the investigative stop. First, the informant lacked reliability. The officers testified that he was unknown to them, and thus there was no "track record" of accurate tips to bolster the informant's allegations concerning Kennison. *See* 1 LaFave § 3.3(b), at 627–43. Second, the informant's basis of knowledge was minimally shown. He merely asserted that he had seen four pounds of marijuana in the trunk of Kennison's car, and failed to explain how he had been able to make such an observation, or otherwise support his assertion. *See* 1 LaFave § 3.3(d), at 659–69. Third, the information contained in the tip relative to the defendant's car, license plate, place of employment, and the time that the defendant's workday ceased is of a kind readily available to many people. Moreover, the informant's predictions that Kennison would leave work and go home and then later go out were not of such character as to show that he was specially privy to her itinerary or familiar with her affairs. *See Alabama v. White*, 110 S. Ct. 2412 (1990).

Fourth, the police were unable to corroborate any of the incriminating allegations contained in the tip; the police merely corroborated mundane, innocent facts easily available to co-workers or friends, or to persons who might wish to harass or embarrass another. *See* 1 LAFAVE § 3.3(f), at 677–97. Fifth, the investigating officers observed no suspicious or incriminating activity during their surveillance of Kennison. *See Pellicci*, 133 N.H. at 531, 580 A.2d at 715. Finally, the informant's tip did not contain the wealth of intimate detail necessary for a finding that the tip was "self-verifying." *See* 1 LAFAVE § 3.3(e), at 670–76. The informant did not provide Kennison's description, her home address, the route she would take during her drive home, the time she would leave her home in the evening, the names or addresses of the person(s) she would see in the evening, or her method of drug delivery.

The State urges us to apply the holding of *Alabama v. White*, 110 S. Ct. 2412. *White* held that a certain informant's anonymous tip was sufficiently reliable to justify an investigative stop of an automobile. *Id.* at 2417. The informant had stated that the defendant would be driving from 235-C Lynwood Terrace Apartments (the dissenting opinion indicates this was the defendant's home) to a specific location, Dobey's Motel, carrying an attaché case containing controlled drugs. *Id.* at 2414. The Court focused on the "caller's ability to predict respondent's *future behavior*," and concluded that the informant had "a special familiarity with respondent's affairs . . . ." *Id.* at 2417 (emphasis in original). The Court observed that "[b]ecause only a small number of people are generally privy to an individual's itinerary, it is reasonable for police to believe that a person with access to such information is likely to also have access to reliable information about that individual's illegal activities." *Id.* at 2417. Such an observation does not apply to the facts of this case, because this informant's two predictions, that Kennison would (1) go home after work and (2) go out somewhere sometime in the evening, are hardly remarkable predictions about future behavior.

 Viewing the officers' reliance on the anonymous tip in the "totality of the circumstances," we hold that the officers lacked reasonable suspicion and therefore unjustifiably intruded upon Kennison's protected privacy interests.

We note that the information Captain Brackett possessed concerning Kennison's possible involvement with illegal drugs in 1981, 1982, and 1983 was stale, *see People v. Siemieniec*, 368 Mich. 405, 118 N.W.2d 430 (1962) (affidavit of police stating defendant was seen

making illegal sales of alcohol on September 13 insufficient to support search warrant issued on September 17), and conclusory in nature, *see State v. Temple*, 65 Haw. 261, 271, 650 P.2d 1358, 1364 (1982) (anonymous telephone call stating person had gun in defendant's car not grounds for stop, as it "failed to rise above the level of unsubstantiated and conclusory hearsay"). As such, it could not be used to justify an investigative stop.

■ Similarly, the tips Captain Brackett received during the summer of 1986, at least fourteen months before Kennison's arrest, could not support the stop at issue here. There was no evidence presented during Kennison's trial or suppression hearing that these tips led to an arrest or the discovery of useful information, or that the police had set up surveillance of Kennison in 1986 to determine whether the tips were based in fact. Moreover, the tips failed to disclose specific dates or instances of marijuana possession. Although the tips may have warranted further investigation, they were too stale, vague, and conclusory to amount to reasonable suspicion that Kennison would be transporting marijuana in the trunk of her car on October 13, 1987. *Cf. State v. Jaroma*, 128 N.H. 423, 430, 514 A.2d 1274, 1278 (1986) (probable cause context); *State v. Cote*, 126 N.H. 514, 527, 493 A.2d 1170, 1179 (1985) (same); *see Siemieniec supra; Temple supra.*

In conclusion, we hold that the information supplied to the police in this case lacked the necessary reliability that would give rise to a reasonable suspicion justifying a stop of Kennison's vehicle. *See Terry v. Ohio*, 392 U.S. 1. Accordingly, the defendant's motion to suppress should have been granted, and we reverse her conviction.

*Reversed.*

THAYER, J., dissented; the others concurred.

THAYER, J., dissenting: Because I disagree with the majority's statement of the law relative to reasonable suspicion and their application of the law to the facts of this case, with the result that the degree of police corroboration required to satisfy the legal standard of reasonable suspicion has been raised to a higher level than required by existing law, I respectfully dissent.

Since, in my opinion, the majority insufficiently state the holdings in the federal cases cited, I find it necessary to give a brief overview of the law of investigatory stops made on the basis of an informant's tip. The United States Supreme Court held in *Adams v. Williams*,

407 U.S. 143, 147 (1972), that an informant's tip may have enough indicia of reliability to justify a *Terry* stop, *Terry v. Ohio*, 392 U.S. 1 (1968), even though the tip would be insufficient to support an arrest or search warrant. In *Illinois v. Gates*, 462 U.S. 213, 238 (1983), the Court adopted a totality of the circumstances standard to be applied in determining whether an informant's tip is sufficient to establish probable cause. In so doing, the Court abandoned the two-pronged test of *Aguilar v. Texas*, 378 U.S. 108 (1964), and *Spinelli v. United States*, 393 U.S. 410 (1969), but indicated that the informant's veracity, reliability, and basis of knowledge would remain as important factors in determining the existence of probable cause. *Gates, supra* at 238–39. Most recently, the Court has held in *Alabama v. White*, 110 S. Ct. 2412, 2417 (1990), that an anonymous tip, corroborated by independent police work, has sufficient indicia of reliability to provide reasonable suspicion to make an investigatory stop. The informant's veracity, reliability, and basis of knowledge are also relevant in the reasonable suspicion context. *Id.* at 2415.

The majority in the case before us state only a portion of the applicable law when they declare that "[t]he quantity of information needed to support reasonable suspicion is of course less than that required for probable cause." The legal standard relative to reasonable suspicion also allows for a lesser *quality* of information. The Supreme Court has clearly stated that "[r]easonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is *less reliable* than that required to show probable cause." *Alabama v. White, supra* at 2416 (emphasis added). An investigating officer can therefore act, based upon reasonable suspicion, on information that is both less in quantity *and* less in quality, *i.e.*, less reliable, than that required for probable cause.

As with probable cause, no bright line test can be established to determine when reasonable suspicion exists because of the many factual variables that occur when our citizens and law enforcement personnel interact. *See Adams v. Williams*, 407 U.S. 143, 147 (1972) ("[o]ne simple rule will not cover every situation"). The case law has, however, developed a legal framework within which the varying facts of each particular case must be analyzed. Central to this analysis is the degree of independent police corroboration of the information provided by an informant. *See, e.g., United States v. McBride*, 801 F.2d 1045 (8th Cir. 1986) (police corroborated license plate number

and make of automobile indicated by anonymous tip; even though car located, four hours and forty-five minutes later, eight blocks from location indicated by tip, sufficient reasonable suspicion established); *United States v. Childress*, 721 F.2d 1148 (8th Cir. 1983) (informant alerted police to alleged drug sales by defendant at particular address; police corroboration of identity of defendant, automobile driven, and presence at address indicated, established sufficient objective facts to justify a stop); *United States v. White*, 648 F.2d 29 (D.C. Cir. 1981) (anonymous tip concerning drug transaction gave time and place of activity, described defendant and vehicle; once corroborated by police, supported *Terry* stop); *Ojeda-Vinales v. Immigration & Naturalization Service*, 523 F.2d 286 (2nd Cir. 1975) (anonymous tip that undocumented alien named Jose working as mechanic at given address, once corroborated by agents, established sufficient reasonable suspicion to justify a stop); *United States v. Gorin*, 564 F.2d 159 (4th Cir. 1977), *cert. denied*, 434 U.S. 1080 (1978) (anonymous telephone call that man at a particular bar had a gun, supported a stop because man was described with reasonable specificity and the tip was confirmed by the bar owner); *United States v. Hernandez*, 486 F.2d 614, 616–17 (7th Cir. 1973), *cert. denied*, 415 U.S. 959 (1974) (anonymous tip, describing automobile by year, model and license plate allegedly transporting Mexicans illegally into country, supported stop when automobile located on road indicated); *United States v. Aldridge*, 719 F.2d 368 (11th Cir. 1983) (anonymous informant described suspect's automobile at particular location, car legitimately stopped one mile from site because details of tip corroborated).

The United States Supreme Court has recently addressed a situation similar to that in the case before us, involving an anonymous tip, and sustained a stop on facts far less substantial than the ones here. In *Alabama v. White*, 110 S. Ct. 2412, the police received an anonymous telephone tip providing the information that a woman named Vanessa White would leave apartment 235-C in the Lynwood Terrace Apartments building in a brown Plymouth station wagon with the right taillight lens broken, that she would go to Dobey's Motel, and that she would be in possession of cocaine contained inside a brown attaché case. *Id.* at 2414. The police saw a car fitting the given description parked outside the 235 building of the Lynwood Terrace Apartments, observed a woman leave the building with nothing in her hands, get into the car and drive in the direction of Dobey's Motel. *Id.* The police stopped the car before it reached the motel. *Id.*

Despite the fact that the name of the woman was not verified, and that there was no check of the ownership of the car, or the precise apartment from which she left, or of ultimate destination, the Supreme Court held that when the woman was stopped, "the anonymous tip had been sufficiently corroborated to furnish reasonable suspicion that [she] was engaged in criminal activity." *Id.* at 2416. The information corroborated by the police included the description of the automobile and that the car was travelling "the most direct route possible" to the motel. *Id.* at 2417. Although the police officer testified that the informant gave a particular time when the suspect would leave the apartment, he did not indicate what that time was. *Id.* at 2417. The Court nonetheless concluded that, because the officer put the 235 building under surveillance immediately after receiving the call and a woman emerged "not too long thereafter," this must have occurred within the time period indicated by the informant. *Id.*

This falls far short of the information known to the police in the case before us. We know here that the basis of the informant's knowledge was personal because he alleged that he had seen four pounds of marijuana in the trunk of Kennison's car. The police confirmed that: the described car belonged to Kennison; Kennison in fact left work at 3:00 p.m., when the informant said she would leave; Kennison went home, as was predicted, where she was observed and personally identified by Captain Brackett; she then left her house, as the informant also predicted; and she travelled a short distance in the described automobile before she was stopped. Based on these facts alone, the corroboration by the police is significantly greater than that in *Alabama v. White*.

The majority conclude, based on the language in *Alabama v. White*, that because the informant made predictions of the defendant's future behavior that were "hardly remarkable," the fact that the predictions were made has no bearing whatsoever on the issue of his reliability. The Court in *White*, however, merely distinguishes between information which anyone could predict because it existed at the time of the tip, for example describing a particular car or reciting a license plate number, and information which the "general public" would have no way of knowing because it had not yet taken place. *Alabama v. White*, 110 S. Ct. at 2417. There is no additional requirement that this latter type of prediction be "remarkable." A prediction of future behavior which actually occurs as predicted is sufficient.

The majority make much of the fact that because the informant's predictions that Kennison would leave work and go home and later go out were "mundane, innocent facts easily available to co-workers or friends," such predictions did not indicate that this particular informant had inside information. However, these facts are not known to the general public but rather are the type the *White* Court refers to as being known to those having a "special familiarity" with the individual, which is an element to be considered on the issue of reliability. Co-workers and friends certainly would be in the class of those having a special familiarity with the suspect's affairs. Furthermore, "it is immaterial that the details corroborating an informant's tip are as consistent with innocent conduct as with illegal activity . . . [T]he choice for police is between making limited investigatory stops and ignoring citizen tips." *United States v. McBride*, 801 F.2d 1045, 1047 (citations omitted). Numerous courts have upheld stops justified only by anonymous tips corroborated by observation of innocent details. *See, e.g., United States v. Andrews*, 600 F.2d 563 (6th Cir. 1979); *United States v. Sierra-Hernandez*, 581 F.2d 760 (9th Cir.), *cert. denied*, 439 U.S. 936 (1978); *United States v. Jones*, 599 F.2d 1058 (9th Cir. 1979); *United States v. Gorin*, 564 F.2d 159 (4th Cir. 1977), *cert. denied*, 434 U.S. 1080 (1978).

However, in addition to the fact that, in the case before us, the informant's tip was based on personal knowledge and that information contained in the tip was corroborated, including the suspect's future behavior, the police were acting on the knowledge that prior reports had been made to the police department that marijuana had been observed in Kennison's truck, that Kennison was known to associate with drug users and sellers, and one of the officers had personal knowledge that she had been present at a drug arrest of persons in a car in which she was a passenger. The majority reject the significance of this information on the ground that it was stale. While that may be true under a probable cause analysis, the information is relevant in determining whether the lesser reasonable suspicion standard was met. This information, viewed in the totality of the circumstances and in light of the police officers' experience, provided enough facts to support "the reasonable conclusion that some type of criminal activity [was] taking place or [was] about to take place." *Millwood v. State*, 527 A.2d 803, 805 (Md. App. 1987).

Firsthand knowledge of the informant and independent police corroboration of the specifics of the tip are critical factors in the legal framework for determining whether an anonymous informant was honest enough and well-informed enough to justify the stop. *See Ala-*

*bama v. White supra.* In cases such as the one before us, the proper focus to determine if there exists reasonable suspicion is not, as suggested by the majority in citing *State v. Pellicci,* on whether the informant's tip falls just short of establishing probable cause, but, rather, on whether it is "completely lacking in indicia of reliability." *Williams,* 407 U.S. at 147.

Under our State Constitution, this court has accepted the holding in *Terry v. Ohio, see State v. Brodeur,* 126 N.H. 411, 493 A.2d 1134 (1985), and we apply the totality of the circumstances analysis in determining the validity of information supplied by an informant. *See State v. Carroll,* 131 N.H. 179, 186, 552 A.2d 69, 74 (1988); *State v. Hazen,* 131 N.H. 196, 200, 552 A.2d 77, 79 (1988). In *State v. Parker,* 127 N.H. 525, 529, 503 A.2d 809, 811 (1985), this court specifically recognized that State and federal constitutional law, with regard to investigative stops, are identical. The defendant here did not argue, nor do the majority discuss or analyze the issue, that the result should be different under the New Hampshire Constitution.

Because there was independent police corroboration of those aspects of the informant's tip capable of objective corroboration, and the informant indicated a personal basis of knowledge, the facts in this case indicate that there were sufficient indicia of reliability to the informant's tip to justify the investigatory stop of the defendant's car. I would, therefore, affirm the trial court's finding that the stop was supported by reasonable suspicion.

After considering oral argument, appropriate pleadings, and the trial court's order relative to defendant's allegations that a promise made by the State regarding leniency in sentencing in exchange for her cooperation was breached and that the police search of her vehicle otherwise violated her constitutional rights, I could not find that the trial court erred in its ruling. Accordingly, I would affirm the conviction.