Exeter District Court
No. 93-726

## THE STATE OF NEW HAMPSHIRE

v.

## DORIS C. MELANSON

September 19, 1995

*Jeffrey R. Howard*, attorney general (*John C. Kissinger, Jr.*, assistant attorney general, on the brief and orally), for the State.

*Stephen T. Jeffco, P.A.*, of Portsmouth (*Stephen T. Jeffco* on the brief and orally), for the defendant.

THAYER, J. The defendant, Doris C. Melanson, appeals her conviction for driving under the influence of drugs or liquor, RSA 265:82 (1993), following a bench trial in the Exeter District Court (*Cullen*, J.). The sole question is whether the trial court erred in denying the defendant's motion to suppress. We affirm.

On the morning of July 22, 1993, Officer Michael Wallace of the Epping Police Department received a report from a Rockingham County dispatcher of a complaint regarding an individual who may have been driving while intoxicated. The officer was provided with the license plate number, a description of the vehicle, including make, model, and color, the vehicle's current location, and direction of travel. While responding to the report, the officer was further advised that the vehicle had driven off the road into a field. Shortly thereafter, the officer observed the vehicle. At that time, he activated the lights on his cruiser to stop the vehicle. The vehicle did not stop, however, and eventually made a wide right turn, veering into an oncoming lane. At that point, the officer activated his audible siren and the vehicle finally stopped. After performing a number of field sobriety tests, the defendant was arrested for driving while intoxicated.

At the hearing on the motion to suppress, the defendant argued that she was seized when the cruiser's lights were activated, and therefore, the court could only consider the information the officer had prior to activating the lights in determining whether reasonable suspicion existed to justify stopping the defendant. The trial court did not rule on when the stop occurred but instead found that sufficient evidence existed prior to the activation of the lights to justify the stop. As we agree with this ruling, we need not address the question of when the defendant was actually seized.

On appeal, the defendant raises both federal and State constitutional arguments. We address the defendant's State constitutional claim first, *see State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983), and because federal law is not more favorable to the defendant in this area, *see Alabama v. White*, 496 U.S. 325 (1990); *State v. Kennison*, 134 N.H. 243, 590 A.2d 1099 (1991), we need not analyze her federal constitutional claim, *State v. Drewry*, 139 N.H. 678, 683, 661 A.2d 1181, 1184 (1995).

■ Under part I, article 19 of our State Constitution, a police officer may make an investigative stop of a vehicle provided that the

stop is based on "a reasonable suspicion that the person detained had committed, was committing, or was about to commit a crime . . . [and the officer is] able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." *State v. Pellicci*, 133 N.H. 523, 529, 580 A.2d 710, 713 (1990) (brackets, quotations and citations omitted).

> Reasonable suspicion is a less demanding standard than probable cause not only in the sense that [it] can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.

*White*, 496 U.S. at 330. "A trial court's findings on reasonable suspicion will be upheld unless clearly erroneous." *State v. Conant*, 139 N.H. 728, 730, 662 A.2d 283, 285 (1995).

The defendant argues that because the information was received from an anonymous source and was conclusory in nature, it was not sufficient to justify a reasonable suspicion on the part of the officer. The defendant argues that our decision in *State v. Kennison* mandates suppression. We do not agree. In *Kennison*, we stated that when evaluating "an investigative stop . . . based on information received from an [unknown] informant . . . we examine the reliability and credibility of the informant, and his or her basis of knowledge, and then make a final judgment according to the totality of the circumstances." *Kennison*, 134 N.H. at 247, 590 A.2d at 1101 (quotation omitted).

 We will first consider the complainant's basis of knowledge. While the officer had no direct evidence in this case, the information provided, including the specific description of the car, knowledge of its exact location at a moment in time, and the specific information regarding the car's movements, reasonably support a conclusion that the caller had personally observed the vehicle. *State v. Tucker*, 878 P.2d 855, 862 (Kan. Ct. App. 1994) (detail of anonymous caller's tip suggests firsthand knowledge; decided under Federal Constitution); *cf. State v. Christy*, 138 N.H. 352, 357, 639 A.2d 261, 264–65 (1994).

> An informant who has personally observed incriminating behavior has a stronger basis of knowledge than does an informant who relates not what he knows personally, but what he has heard others say. Moreover, an explicit and

detailed description of alleged wrongdoing is entitled to greater weight than a general assertion of criminal activity.

*Conant*, 139 N.H. at 731, 662 A.2d at 285–86 (citation omitted).

■ This fact alone distinguishes this case from *Kennison*. In *Kennison*, the incriminating information relayed to the police related to a controlled substance that the informant had allegedly seen in the defendant's trunk. *Kennison*, 134 N.H. at 247, 590 A.2d at 1101. The wrongdoing alleged in *Kennison* is the type done privately. Only individuals intimately familiar with the defendant's activities would be able to obtain such information. Therefore, in order to be deemed reliable, the informant must be able "to explain how he had been able to make such an observation, or otherwise support his assertion." *Id.* In this case, however, the conduct complained of, driving while intoxicated, is done publicly, on the public ways of this State. An individual need have no great familiarity with the defendant in order to observe the behavior in question. As a result, less information regarding the informant's basis of knowledge would be necessary.

■ The second consideration is the credibility and reliability of the complainant. While the police had no information on the caller, they were able to corroborate certain details, and this corroboration can be used to establish credibility and reliability. While these were "innocent" details, their specificity supports a finding of the complainant's reliability. *Conant*, 139 N.H. at 731, 662 A.2d at 285–86 (greater specificity entitled to greater weight); *cf. State v. Anderson*, 589 A.2d 372, 375 (Conn. App. Ct.) (specificity of anonymous tip contributed to finding of reasonable suspicion), *cert. denied*, 593 A.2d 130 (Conn. 1991); *People v. Faucett*, 499 N.W.2d 764, 774 (Mich. 1993) (reliance on anonymous tip validated by officer's ability to corroborate the defendant's identity, vehicle, and travel route); *State v. Lownes*, 499 N.W.2d 896, 900 (S.D. 1993) (officer's verification of vehicle's description and location verified reliability of anonymous tip). The officer was able to determine that the caller had accurately described the vehicle, including make, model, color, and license plate number, and had accurately identified the vehicle's current location and direction of travel. Additionally, that the report and the verification occurred within a few minutes supports the complainant's credibility. The caller was not speculating as to possible future behavior but was instead reporting an ongoing event. The officer was almost immediately able to verify the facts relayed to him. This closeness in time would support the officer's conclusion that the informant had actually observed the reported behavior.

■ Additionally, the officer faced the potential of a dangerous public safety hazard. Unlike *Kennison*, where the police could have safely observed the defendant in order to obtain additional information regarding her illegal activity, here failure quickly to stop the defendant's vehicle in order to confirm or dispel the officer's suspicions could have exposed the public as well as the defendant herself to the danger of an impaired driver. The officer's ability to observe incriminating behavior, therefore, was limited by the exigency of the situation.

■ Officer Wallace received specific information relayed from a concerned citizen about a suspected violation of the law. The information included an exact description of the vehicle, the vehicle's current location and direction of travel, and a description of prior erratic driving. Additionally, the officer faced the very real public safety threat posed by an impaired driver. We cannot say that, based on the totality of the circumstances, the trial court erred in determining that the officer had a reasonable suspicion that the driver was impaired. The trial court, therefore, properly denied the defendant's motion to suppress.

*Affirmed.*

All concurred.