Rockingham
No. 96-049

THE STATE OF NEW HAMPSHIRE

v.

WILLIAM MCBREAIRTY

May 9, 1997

*Steven M. Houran*, acting attorney general (*John A. Stephen*, assistant attorney general, on the brief and orally), for the State.

*Law Office of David H. Bownes, P.C.*, of Laconia (*David H. Bownes*, by brief and orally), for the defendant.

BRODERICK, J. The defendant, William McBreairty, was convicted for operating a motor vehicle after being adjudicated a habitual offender. *See* RSA 262:23 (1993). He appeals the Superior Court's (*Galway*, J.) determination that the investigatory stop of his vehicle was constitutionally permissible because it was based upon a reasonable suspicion that he had been speeding. We affirm.

At a hearing on the defendant's motion to suppress, Raymond Police Officer David Spinney testified that at 9:45 p.m. on April 27, 1995, while on routine patrol, he observed the defendant's vehicle as it proceeded west on Route 27. The officer, who had earlier received a report from the Deerfield police that they were looking for a similar vehicle, turned his cruiser around and followed the defendant. The officer followed the defendant at an even distance for approximately half a mile while noting his own speed. In this way he determined that the defendant's vehicle was traveling ten to fifteen miles per hour above the forty-five miles per hour speed limit as the vehicle entered a fifty-five miles per hour area. The officer continued to follow the vehicle for a short time while attempting to obtain information about its license plate. The defendant eventually turned off Route 27 and into the Leisure Village Trailer Park (Park), at which point the officer stopped the defendant. A motor vehicle record check revealed that the defendant was under suspension as a habitual offender. The officer arrested the defendant on that charge.

During his testimony, the officer acknowledged that two residents of the Park had told him, prior to April 27, of a vehicle with the defendant's license plate number, often driven by a male under suspension and while intoxicated. The defendant argued that he was not actually stopped for speeding because what the officer was "really trying to do [was] confirm some suspicion that he [had], a suspicion that he heard from two older ladies — who knows, weeks or months [before] — about a particular car and a particular operator." In denying the motion to suppress, the court concluded that the officer made the investigatory stop based upon a reasonable suspicion that the defendant had been speeding; the court did not find the stop pretextual simply because the officer "made further observations and tried to verify the defendant's license before stopping the defendant for speeding."

On appeal, the defendant maintains that under both the State and Federal Constitutions, there existed no legitimate investigatory basis for the stop and, in the alternative, that the officer's claim that the defendant was stopped for speeding was pretextual. We analyze the defendant's State constitutional arguments first, relying upon federal cases only for guidance. *See State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983). Because we conclude in this instance that the protections provided by the State and Federal Constitutions are equivalent, we decline to reach the defendant's federal constitutional argument. *See Whren v. United States*, 116 S. Ct. 1769 (1996).

■ Under part I, article 19 of our State Constitution, every citizen has "a right to be secure from all unreasonable searches and seizures of his person." Consistent with this right, a police officer may stop a vehicle for investigatory purposes

> provided that the stop is based on a reasonable suspicion that the person detained had committed, was committing, or was about to commit a crime and the officer is able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion.

*State v. Melanson*, 140 N.H. 199, 200-01, 665 A.2d 338, 339 (1995) (quotation and brackets omitted). In reviewing the trial court's ruling that the stop in this case was justified, we will defer to its factual findings on the events leading up to the stop, unless those findings are clearly erroneous; we review *de novo*, however, the ultimate determination of whether, in view of those findings of historical fact, reasonable suspicion existed. *See Ornelas v. United States*, 116 S. Ct. 1657, 1662-63 (1996).

■ Here, the trial court concluded that the officer had a reasonable, articulable suspicion that the defendant had been speeding. At the hearing on the suppression motion, the officer explained that by following the defendant's vehicle he determined that it was traveling above the permissible speed limit. The officer thus articulated a specific factual basis for believing the defendant had violated New Hampshire law, *see* RSA 265:60, II (1993) (concerning speed in excess of posted limits), which provided sufficient justification for stopping the defendant, *see State v. Oxley*, 127 N.H. 407, 411, 503 A.2d 756, 759 (1985).

The defendant nonetheless argues that speeding was merely a pretext for the officer's desire to investigate his suspicion that the defendant was the motorist identified by the two Park residents, a suspicion which itself would not justify the stop. To evaluate the allegedly pretextual nature of a search or seizure, the defendant urges us to employ the standard articulated by the United States Court of Appeals for the Eleventh Circuit in *United States v. Valdez*, 931 F.2d 1448 (11th Cir. 1991), which asks "whether a reasonable officer would have made the seizure in the absence of illegitimate motivation." *Id.* at 1450. The defendant contends that any other standard "would invite the unfettered discretion of law enforcement in making a determination as to whether to make a traffic stop."

■ The United States Supreme Court has rejected the Eleventh Circuit's approach in the fourth amendment context. *See Holland v. City of Portland,* 102 F.3d 6, 9-10 (1st Cir. 1996) (discussing Supreme Court's rejection of *Valdez* standard). In *Whren v. United States,* the Court made clear that an officer's motivations are immaterial so long as there exists a valid justification for an investigatory stop: "the fact that [an] officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." *Whren,* 116 S. Ct. at 1774 (quotation omitted). Simply put, "the Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, whatever the subjective intent [of the police officer]." *Id.* at 1775.

We find this reasoning persuasive. The ultimate test of the propriety of an investigatory stop under part I, article 19 is whether, viewing the circumstances objectively, an officer had a specific and articulable basis for concluding that an individual had committed, was committing, or was about to commit a crime. *See Melanson,* 140 N.H. at 201, 665 A.2d at 339. If such a justification is found, the stop will be deemed constitutional. *See, e.g., State v. Brodeur,* 126 N.H. 411, 416, 493 A.2d 1134, 1138 (1985); *cf.* RSA 594:13 (1986). This is so regardless of whether a hypothetical "reasonable" officer, absent any allegedly illegitimate motivation, would have elected not to investigate. And while it is true that the breadth of potential traffic violations — and, consequently, the potential grounds to stop motorists — may be great, "we are aware of no principle that would allow us to decide at what point a code of law becomes so expansive and so commonly violated that infraction itself can no longer be the ordinary measure of the lawfulness of enforcement." *Whren,* 116 S. Ct. at 1777.

As explained above, the trial court found in this case that the officer had a specific, articulable basis for stopping the defendant — that the defendant had exceeded the posted speed limit. An investigatory stop of a motor vehicle so supported is valid under our State Constitution. *See Melanson,* 140 N.H. at 200-01, 665 A.2d at 339. The trial court accordingly did not err in denying the defendant's motion to suppress.

*Affirmed.*

All concurred.