Lebanon District Court
No. 99-194

### THE STATE OF NEW HAMPSHIRE

v.

### PHILIP A. GALGAY

April 17, 2000

*Philip T. McLaughlin*, attorney general (*Ann M. Rice*, senior assistant attorney general, on the brief and orally), for the State.

*Green & Utter, P.A.,* of Manchester (*Philip H. Utter* on the brief and orally), for the defendant.

BROCK, C.J. The State brings this interlocutory appeal, *see* RSA 606:10, II(a) (1986), from an order of the Lebanon District Court (*Cirone*, J.) granting the motion of the defendant, Philip A. Galgay, to suppress evidence seized as a result of an investigatory stop. We reverse and remand.

The following facts are essentially undisputed. On October 25, 1998, at approximately 11:20 p.m., Bert Martin called the Lebanon Police Department to report a suspected drunk driver. He stated

that the driver was driving a beige or white, newer model Cadillac with a license plate number of BBU316. Martin provided the dispatcher with his address and phone number. A computer check of the license plate number revealed that it was from a white Cadillac registered to the defendant. The dispatcher conveyed this information to police officer Scott Rathburn. Officer Rathburn called Martin who relayed the following information: He was traveling southbound on Interstate 89 when a white or beige newer model Cadillac passed him on the left, pulled in front of him, and then slowed down. When he pulled into the left lane to pass the Cadillac, the car swerved over toward the left. Fearing a collision, Martin slowed down and pulled into the right hand lane behind the Cadillac. The Cadillac was weaving all over the road. Martin followed the car as it left the highway and observed the car turn onto Heather Road and almost collide with concrete construction barriers in the road. The Cadillac then turned into the parking lot of Fort Lou's Restaurant, missing the driveway, and almost hitting a sign. Martin observed the driver, a white male wearing a white shirt, pull into a parking space and attempt to exit the car while it was still in reverse. After putting the car in park, the driver entered the restaurant. Martin then drove home and called the police. He estimated that seven or eight minutes had elapsed from the time he last saw the car and driver until he arrived at home.

After receiving this information, Officer Rathburn drove to Fort Lou's, arriving at approximately 11:35 p.m. A white Cadillac with the license plate number BBU316 was parked in front of the restaurant and, while driving around the building, Officer Rathburn observed a white male in a white shirt sitting at the counter.

Officer Rathburn parked his car across from the restaurant. Approximately at midnight, the officer saw the defendant, the first person to leave the restaurant with a white shirt, get into the Cadillac. As soon as the Cadillac left the parking lot, Officer Rathburn activated his lights and pulled the car over. From the time Officer Rathburn observed the defendant leaving the restaurant until the time the car was pulled over, he did not observe any noticeable signs indicating that the defendant was impaired.

The defendant filed a motion to suppress evidence obtained during the investigatory stop of his car on the ground that the stop was not supported by an articulable suspicion that the defendant had or was about to commit a crime, and therefore the stop violated his right under the New Hampshire Constitution to be free from unreasonable searches and seizures. N.H. CONST. pt. I, art. 19. The trial

court granted the motion after a hearing, and the State's motion to reconsider was denied. This appeal followed.

In reviewing the trial court's ruling, "we will defer to its factual findings on the events leading up to the stop, unless those findings are clearly erroneous; we review *de novo*, however, the ultimate determination of whether, in view of those findings of historical fact, reasonable suspicion existed." *State v. McBreairty*, 142 N.H. 12, 14, 697 A.2d 495, 496 (1997). In analyzing the defendant's State constitutional arguments we rely upon federal cases only for guidance. *See State v. Ball*, 124 N.H. 226, 233, 471 A.2d 347, 352 (1983).

In granting the defendant's motion to suppress, the trial court focused on whether Officer Rathburn had sufficient information to enable him to identify the driver of the Cadillac at the time he stopped it as being the same driver that Martin had observed approximately fifty minutes earlier. The court found that the police officer's belief that the driver of the Cadillac at the time of the stop was the same driver that Martin observed driving erratically almost an hour earlier was "speculative" and based on a "hunch." In reaching this conclusion, the court, relying on *State v. Koppel*, 127 N.H. 286, 499 A.2d 977 (1985), stated that "the State must prove that no less intrusive means (than a seizure) are available to accomplish the State's goal of investigating and preventing impaired drivers from operating on public ways." Because the officer could have obtained more specific identification information in a less intrusive means than stopping the Cadillac, the trial court found that the defendant's constitutional rights were violated by the stop.

█ Under Part I, Article 19 of our State Constitution, every citizen has "a right to be secure from all unreasonable searches and seizures of his person." Consistent with this right,

> a police officer may make an investigative stop of a vehicle provided that the stop is based on a reasonable suspicion that the person detained had committed, was committing, or was about to commit a crime and the officer is able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion.

*State v. Melanson*, 140 N.H. 199, 200-01, 665 A.2d 338, 339 (1995) (quotation and brackets omitted).

The defendant contends that although it would be reasonable for an officer who receives information about a car currently operating

on the road to presume that the driver of the car still on the road when stopped is the same driver who was earlier observed, it was not reasonable for Officer Rathburn to do so here. We disagree. "The facts which are a sufficient basis to support an investigative stop need not necessarily reach the level of those needed to support [either] an arrest," *State v. Oxley*, 127 N.H. 407, 411, 503 A.2d 756, 759 (1985), or a finding of probable cause, *see State v. Kennison*, 134 N.H. 243, 247, 590 A.2d 1099, 1101 (1991).

■ Here, Officer Rathburn had the following facts: a white male wearing a white shirt had been reported erratically driving a white or beige newer model Cadillac with license plate number BBU316 southbound on Interstate 89; the driver parked the Cadillac at Fort Lou's and went inside the restaurant. When Officer Rathburn arrived at the restaurant, he observed the Cadillac and an individual in the restaurant that fit the description given by Martin. No one else left the restaurant with a white shirt and proceeded to the Cadillac except the defendant. That time had passed between the initial call from Martin, the officer's subsequent arrival at the restaurant, and the defendant leaving the restaurant, does not mean that Officer Rathburn could not draw the inference that the man now driving the Cadillac was the same person who had been driving it earlier. While the passage of time makes it *possible* that the current driver and previous driver were not the same person, Officer Rathburn could reasonably infer that they were.

Moreover, the trial court's reliance on *Koppel* for the proposition that the officer was required to use less intrusive means than stopping the Cadillac to affirmatively identify the driver is incorrect. In *Koppel*, the constitutionality of roadblocks to detect drunk drivers was at issue. There we held that the State had failed to demonstrate that the roadblocks were the least intrusive manner in which to deter and apprehend drunk drivers. *See Koppel*, 127 N.H. at 292-94, 499 A.2d at 981-82. Thus, *Koppel* involved the situation where all individuals were stopped without either probable cause or a reasonable suspicion to believe criminal activity had or was about to occur. *See id.* at 291-92, 499 A.2d at 981. Here, in contrast, the investigatory stop was based on particular information about one individual, giving rise to a reasonable suspicion.

The defendant urges us to uphold the trial court's decision because valid reasons could exist for the defendant's erratic driving behavior. That observed activity could be consistent with both guilty and innocent behavior does not mean that an officer must rule out innocent explanations before proceeding. *See, e.g., United States v.*

*Trullo*, 809 F.2d 108, 112 (1st Cir.), *cert. denied*, 482 U.S. 916 (1987) (noting that "it must be rare indeed that an officer observes behavior consistent only with guilt and incapable of innocent interpretation" (brackets omitted)).

As an additional ground to uphold the trial court's ruling, the defendant contends that the officer's subsequent observations that the defendant was able to enter the Cadillac and exit the restaurant parking lot without difficulty somehow negated the defendant's prior reported behavior indicating that he was impaired. We disagree. The events giving rise to the officer's reasonable suspicion occurred before the officer observed the defendant enter the Cadillac and exit the restaurant's parking lot. The defendant's ability for a brief span of time to competently enter his car and drive out of the parking lot less than one hour after the erratic driving reported by Martin does not negate the officer's reasonable suspicion that the Cadillac had been driven to the restaurant by an impaired driver and the reasonable inference that the driver was still impaired, albeit perhaps in better control of his faculties.

We hold Officer Rathburn had "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant[ed]" the investigatory stop of the Cadillac. *Kennison*, 134 N.H. at 247, 590 A.2d at 1101 (quotation omitted).

*Reversed and remanded.*

NADEAU, J., did not sit; the others concurred.