Merrimack
No. 2003-133

THE STATE OF NEW HAMPSHIRE

v.

KENNETH GOWEN

Argued: October 8, 2003
Opinion Issued: November 24, 2003

*Peter W. Heed*, attorney general (*Susan P. McGinnis*, assistant attorney general, on the brief and orally), for the State.

*Hanlon & Zubkus*, of Rochester (*Robert A. Zubkus* on the brief and orally), for the defendant.

DUGGAN, J. Following a trial on stipulated facts, the defendant, Kenneth Gowen, was convicted of being a felon in possession of a dangerous weapon, *see* RSA 159:3 (1994) (amended 2001), driving while intoxicated,

subsequent offense, *see* RSA 265:82 (Supp. 2002); RSA 265:82-b, II (Supp. 2001) (amended 2001), and operating after suspension, *see* RSA 263:64 (1993) (amended 2002). On appeal, the defendant contends that the Superior Court (*Manias*, J.) erred in denying his motion to suppress because the police did not have reasonable suspicion to stop his pickup truck. We affirm.

At the suppression hearing, Corporal Eric Bourn of the Epsom Police Department testified that on December 2, 2001, at 12:20 a.m., he was parked near the Epsom traffic circle next to the cruiser of Corporal Wayne Preve, another Epsom officer. While the two officers were talking, a green Dodge pickup truck pulled up next to them. The driver of the truck pointed at another green pickup truck that was headed westbound on Route 4 out of the traffic circle and stated that "she believed the driver of that truck was intoxicated."

Bourn pulled out onto Route 4 to stop the truck while Preve remained behind to gather information from the reporting driver. As Bourn pursued the truck, he did not observe the truck speeding, weaving or being operated in an erratic manner. After approximately one mile, Bourn caught up to the truck, pulled it over and approached the driver's side of the truck. During his conversation with the driver, he made observations leading him to believe the driver was intoxicated and placed him under arrest.

On appeal, the defendant argues that the conclusory information the anonymous driver provided to the police did not amount to the reasonable suspicion necessary to stop his truck. The defendant's brief relies exclusively on Part I, Article 19 of the New Hampshire Constitution and so we address only that claim.

> In reviewing the trial court's ruling that the stop in this case was justified, we will defer to its factual findings on the events leading up to the stop, unless those findings are clearly erroneous; we review *de novo*, however, the ultimate determination of whether, in view of those findings of historical fact, reasonable suspicion existed.

*State v. McBreairty*, 142 N.H. 12, 14 (1997).

The police may stop a person driving on the open highway provided that "the stop is based on a reasonable suspicion that the person detained had committed, was committing, or was about to commit a crime and the officer is able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." *Id.* (quotation omitted). When the facts upon which the officer

relies to make the stop do not stem from personal observation, but instead come from an informant, "we [must] examine the reliability and credibility of the informant, and his or her basis of knowledge, and then make a final judgment according to the totality of the circumstances." *State v. Melanson*, 140 N.H. 199, 201 (1995) (quotation omitted).

The defendant argues that the stop of his truck lacked reasonable suspicion because: (1) the police lacked facts that established the reliability or credibility of the anonymous informant; (2) the police failed to establish the anonymous informant's basis of knowledge; and (3) Bourn's observations of the defendant's truck dispelled any suspicion that he was driving under the influence. We address each argument in turn.

The defendant first argues that the police lacked facts that established the reliability or credibility of the anonymous informant. We disagree with the defendant that the driver who provided the information to the police was an anonymous informant. Rather, the driver was an identifiable witness, which did not obligate the police to "inquire into or to demonstrate [her] credibility." *State v. Corey*, 127 N.H. 56, 59 (1985).

The usual anonymous informant involves a "[telephone] call made from an unknown location by an unknown caller." *Florida v. J.L.*, 529 U.S. 266, 270 (2000); *see also Melanson*, 140 N.H. at 200-01 (reviewing an anonymous tip provided by an unknown caller). Tips from anonymous informants require greater scrutiny because "[u]nlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated, an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity." *J.L.*, 529 U.S. at 270 (quotation omitted).

Here, the informant presented herself in person to the police, but did not immediately identify herself. Nonetheless, the facts and circumstances provided the police with enough information so that her identity could be ascertained. She made personal contact with the police in order to report what she had witnessed. The police could easily note the license plate number of her truck and the truck itself was identifiable because it bore the name of a landscaping company in Deerfield. She did not simply give information to the police and immediately drive off. Thus, she was not anonymous like the informant in *Melanson*, but rather an identifiable witness.

"Absent some indication that the witness may not be telling the truth, such as the clear presence of bias, the police are not obligated to inquire into or to demonstrate the witness' credibility." *Corey*, 127 N.H. at 59; *accord Welch v. Director, N.H. Div. Of Motor Vehicles*, 140 N.H. 6, 8

(1995) (applying the presumption of credibility to an identifiable witness). Because there is nothing in the record to suggest that the driver had a reason to be untruthful, the police could properly rely on her information without inquiring into her reliability or credibility.

The defendant next argues that the police failed to establish the informant's basis of knowledge where the informant only gave the conclusory statement that "she believed the driver of that truck was intoxicated." The defendant points out that the informant provided no underlying facts from which the police could determine that her conclusion that the defendant was intoxicated was reliable.

We agree that when the informant is identified, "the tip [must] contain[] sufficient indicia of reliability to justify the stop." *State v. Riefenstahl*, 779 A.2d 675, 677 (Vt. 2001). Here, we find sufficient indicia of reliability on these facts.

 The tip involved the report that another driver was intoxicated. Because the conduct observed, driving while intoxicated, is done publicly, less information regarding the informant's basis of knowledge is necessary. *See Melanson*, 140 N.H. at 202. In addition, while the information itself was conclusory, it was partially corroborated by the woman simultaneously pointing out the pickup truck as it drove by. From this action and the fact that she spontaneously stopped to report her observations, the police could reasonably infer that the woman had personally and recently observed behavior that supported her conclusion. "An informant who has personally observed incriminating behavior has a stronger basis of knowledge than does an informant who relates not what [s]he knows personally, but what [s]he has heard others say." *Id.* at 201. Moreover, while the statement was conclusory in nature, a lay person is qualified to identify intoxication, *Arsenault*, 115 N.H. 109, 111 (1975), and a lay person's opinion on intoxication is admissible at trial, *State v. Slayton*, 116 N.H. 613, 616 (1976). Accordingly, the police officers could properly rely on her statement without further inquiring into her basis of knowledge.

On similar facts, other courts are in accord with our holding that the information provided by the identifiable witness was sufficient to justify the stop. *See, e.g., State v. Ramey*, 717 N.E.2d 1153, 1155-59 (Ohio Ct. App. 1998) (upholding stop where unidentified passerby flagged down police to report that a gold Honda with a certain license plate number was "a possible DUI"); *Rittman v. State ex rel. Dept. of P.S.*, 875 P.2d 439, 440-41 (Okla. Ct. App. 1994) (upholding stop where unidentified citizens pointed to a truck in a parking lot and told police officer that they believed driver

was intoxicated). *But see Campbell v. State of Wash. Dept. of Licensing*, 644 P.2d 1219, 1220-21 (Wash. Ct. App. 1982) (holding stop was not justified where motorist drove past police officer and yelled that a drunk driver was headed southbound in a certain vehicle).

█ Finally, the defendant argues that Bourn's observations of his truck dispelled any suspicion that he was driving under the influence. We disagree. Here, the driver's statement to the police was sufficient to establish reasonable suspicion to stop the defendant's truck. While Bourn did not observe impaired driving while he pursued the defendant, the defendant's apparent ability to competently drive the truck for approximately one mile did not negate Bourn's reasonable suspicion that he was impaired. *See State v. Galgay*, 145 N.H. 100, 104 (2000).

*Affirmed.*

NADEAU and DALIANIS, JJ., concurred.