IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
May 8, 2008 Session Heard at Jacksboro[1]

**STATE OF TENNESSEE v. TYSON LEE DAY**

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Sumner County**
**No. 286-2005     Jane Wheatcraft, Judge**

———————

**No. M2006-00989-SC-R11-CD - Filed September 22, 2008**

———————

WILLIAM C. KOCH, JR., J., dissenting in part.

The State of Tennessee filed its Tenn. R. App. P. 11 application in this case to determine whether Tennessee recognizes the "community caretaking" exception to the requirement that police officers have at least reasonable suspicion when they make a traffic stop. I agree with the Court's conclusion that we cannot address this question because it is beyond the scope of the legal issue certified to this Court in accordance with Tenn. R. Crim. P. 37(b)(2). Rather than dismissing the appeal as being improvidently granted, the Court has decided to determine whether, under the essentially undisputed facts, Officer Jeff Tarkington acted reasonably when he stopped Tyson Lee Day's automobile on May 16, 2004. The Court has decided that Officer Tarkington did not act reasonably. I cannot concur with this conclusion.

**A.**

The facts are straightforward and compelling. On May 16, 2004, while on a routine patrol on New Shackle Island Road, Hendersonville Police Officer Tarkington observed a vehicle being driven by Lisa C. Ferrell. Although Officer Tarkington did not know Ms. Ferrell's identity at that time, he observed that she was signaling him by flashing her vehicle's headlights and by waving her arms. Ms. Ferrell was also pointing at the white sport utility vehicle (SUV) in front of her.

Based on these observations, Officer Tarkington performed a U-turn and pulled between the white SUV and Ms. Ferrell's vehicle. He activated his blue lights to signal the driver of the white SUV to pull over. The driver complied. Officer Tarkington stopped his cruiser in back of the white SUV, and Ms. Ferrell pulled over in back of Officer Tarkington. After a brief conversation with Ms.

—————————————

[1]Oral argument was heard May 8, 2008, in Jacksboro, Campbell County, Tennessee, as a part of the **S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents (S.C.A.L.E.S.) project.

Ferrell, Officer Tarkington approached the white SUV which was being driven by Tyson Lee Day. Officer Tarkington could smell the odor of alcohol on Mr. Day's breath. After Mr. Day failed several field sobriety tests, Officer Tarkington arrested him.

Mr. Day's blood alcohol content proved to be .25 percent. Officer Tarkington's subsequent investigation revealed that Mr. Day was driving on a revoked license and that he had two prior DUI convictions. Mr. Day was charged by presentment with his third offense of driving under the influence and with driving on a revoked license. When the trial court denied his motion to suppress the evidence of his intoxication based on his claim that Officer Tarkington did not have a reasonable suspicion to stop him, Mr. Day pleaded guilty to both offenses and was sentenced to one hundred and twenty days in jail followed by seven months on probation. As part of his guilty plea, Mr. Day, acting in accordance with Tenn. R. Crim. P. 37(b)(2), reserved the right to challenge the admissibility of the evidence of his intoxication on appeal. On March 7, 2007, the Court of Criminal Appeals reversed Mr. Day's convictions on the ground that Officer Tarkington did not have a reasonable suspicion to stop Mr. Day on May 16, 2004. *State v. Day*, No. M2006-00989-CCA-R3-CD, 2004 WL 677867, at *4-5 (Tenn. Ct. App. Mar. 7, 2007).

**B.**

There is no question that stopping an automobile and detaining its occupants constitutes as "seizure" for the purpose of the constitutional protections against unreasonable searches and seizures.[2] *Whren v. United States*, 517 U.S. 806, 809-10 (1996); *State v. Pulley*, 863 S.W.2d 29, 30 (Tenn. 1993). These acts necessarily interfere with the occupants' freedom of movement. In addition, they are inconvenient, they consume time, and they can create substantial anxiety. *Delaware v. Prouse*, 440 U.S. 648, 657 (1979). Thus, the police must have at least an "articulable and reasonable suspicion" that a motorist is subject to being stopped for a violation of the law before stopping an automobile. *Delaware v. Prouse*, 440 U.S. at 663.

An articulable and reasonable suspicion must be something more than an "inchoate and unparticularized suspicion or hunch." *Terry v. Ohio*, 392 U.S. 1, 27 (1968). It must have a particularized and objective basis. *State v. Binette*, 33 S.W.3d 215, 218 (Tenn. 2000). When the courts are called upon to determine whether a police officer had an articulable and reasonable suspicion to justify stopping an automobile, they should consider the totality of the circumstances, *see Alabama v. White*, 496 U.S. 325, 330 (1990); *State v. Nicholson*, 188 S.W.3d 649, 659 (Tenn. 2006), particularly (1) the objective observations of the officer, (2) the information obtained from other officers or agencies, (3) information obtained from citizens, and (4) the pattern of operation of certain offenders. *State v. Watkins*, 827 S.W.2d 293, 294 (Tenn. 1992).

As it has developed over the years, the "reasonable suspicion" standard is a common sense standard that permits an officer to make a brief investigatory stop when he or she reasonably suspects that a specific person has engaged in, is engaging in, or is about to engage in criminal activity. The

---

[2] U.S. Const. amend IV; Tenn. Const. art. I, § 7.

reasonableness of an officer's suspicion depends on both the content of the information the officer possesses and the degree of reliability of that information. *Alabama v. White*, 496 U.S. at 330. The burden is on the State to present sufficient facts to demonstrate that the officer had a reasonable suspicion to justify the stop. *See State v. Nicholson*, 188 S.W.3d at 656-57, 659 (holding that the officer making the investigatory stop must be able to point to specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the intrusion).

## C.

The Court has decided that Officer Tarkington acted unreasonably because he did not know Ms. Ferrell's identity when he stopped Mr. Day and because he did not follow Mr. Day's vehicle until Mr. Day committed an infraction that would justify pulling him over. I disagree. Police officers are often called upon to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving. *See Graham v. Connor*, 490 U.S. 386, 396-97 (1989); *State v. Davis*, No. E2003-02214-CCA-R3-CD, 2004 WL 2583893, at *8 (Tenn. Crim. App. Nov. 15, 2004), *perm. app. denied* (Tenn. Mar. 21, 2005). They must frequently rely on information provided to them by bystanders or eyewitnesses to alleged criminal activity. In circumstances that require a very quick police response, the information provided by a victim or an eyewitness will generally be sufficient to provide reasonable suspicion, even without specific corroboration of reliability. 2 Wayne R. LaFavre, *Search and Seizure* § 3.4(a), at 224-25 (4th ed. 2004) ("*Search and Seizure*").[3]

Dismissing Ms. Ferrell as an anonymous informant artificially undermines her significance. The manner in which police officers receive information from citizens runs the gamut from completely anonymous telephone calls to citizens who have face-to-face contact with the officer. A completely anonymous tip is the least reliable and must be corroborated with additional facts. *See Florida v. J.L.*, 529 U.S. 266, 270 (2000). In contrast, information given by a witness or bystander is inherently more reliable. Thus, the same amount of corroboration that is required in anonymous informant cases should not be required in cases involving information provided directly to the officer by a victim or witness because (1) these circumstances generally require a rapid police response and (2) average citizens providing information to law enforcement officers should be presumed to be credible in the absence of circumstances suggesting that they are not. *Search and Seizure* § 3.4(a), at 225; *see also Commonwealth v. Kelly*, 180 S.W.3d 474, 478 (Ky. 2005); *State v. Griffey*, 241 S.W.3d 700, 704-05 (Tex. App. 2007).

Other federal and state courts have differentiated between the reliability of information provided by a completely anonymous informant and information provided by a citizen informant

---

[3] *People v. Johnson*, 93 Cal. Rptr. 534, 536 (Ct. App. 1971) (upholding the arresting officer's reliance on the unverified contention of a woman that the defendant had kidnaped her child by noting that "responding officers should not be required to insist that the reporting mother 'prove her case' in the street before acting in reliance upon her representations"); Barry Kamins, *New York Search and Seizure* § 2.04 (2006) (stating that "[w]hen the police observe a defendant being chased on the street by an individual, the police have reasonable suspicion to stop the defendant, even though the police do not learn until after the chase that the pursuer was the victim, a witness, or a bystander who was helping the victim").

who witnessed a criminal act and who provided the information in a face-to-face meeting with the police or who have placed their anonymity at risk and who may be identified by the police. Justice Kennedy has observed that:

> If an informant places his anonymity as risk, a court can consider this factor in weighing the reliability of the tip. An instance where a tip might be considered anonymous but nevertheless sufficiently reliable to justify a proportionate police response may be when an unnamed person driving a car the police officer later describes stops for a moment and, face to face, informs the police that criminal activity is occurring.

*Florida v. J.L.*, 529 U.S. at 276 (Kennedy, J., concurring). Many jurisdictions now hold that the information provided by a citizen informant who is identifiable is sufficient to establish reasonable suspicion for an investigatory stop. *See, e.g., United States v. Sanchez*, 519 F.3d 1208, 1213-14 (10th Cir. 2008); *State v. Jensen*, 952 A.2d 95, 100 (Conn. App. Ct. 2008); *A.D.J. v. State*, 813 So.2d 127, 129 (Fla. Dist. Ct. App. 2007); *Village of Mundelein v. Thompson*, 793 N.E.2d 996, 1003 (Ill. App. Ct. 2003); *Commonwealth v. Costa*, 812 N.E.2d 371, 376 (Mass. 2007); *State v. Gowen*, 837 A.2d 297, 299 (N.H. 2003); *State v. Golotta*, 837 A.2d 359, 367-68 (N.J. 2003).

Ms. Ferrell placed her anonymity at risk when she signaled Officer Tarkington to stop the white SUV being driven by Mr. Day. In light of the proximity between Mr. Day's vehicle and Ms. Ferrell's vehicle, Officer Tarkington could reasonably have concluded that Ms. Ferrell had witnessed the commission of a crime or that she was signaling him that Mr. Day needed assistance. The contours of the constitutional protection against unreasonable searches and seizures are shaped by the concept of reasonableness. *Florida v. Jimeno*, 500 U.S. 248, 250 (1991); *State v. Meeks*, ___ S.W.3d ___, ___, 2008 WL 4007429, at *9 (Tenn. 2008); *State v. Scarborough*, 201 S.W.3d 607, 616 (Tenn. 2006). Based on the facts of this case, I cannot agree that Officer Tarkington's decision to stop Mr. Day's vehicle was unreasonable.

_____
WILLIAM C. KOCH, JR., JUSTICE
